**FRED W. AMEND CO., Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 71-1248.

United States Court of Appeals, Seventh Circuit.

Dec. 23, 1971.

Campbell, Senior District Judge, sat by designation.

John Enrietto, Chicago, Ill., for petitioner-appellant; Hamel, Morgan, Park & Saunders, Washington, D. C., of counsel.

Johnnie M. Walters, Asst. Atty. Gen., Charles R. Burnett, Atty., Meyer Rothwacks, Bennet N. Hollander, Attys., Tax Division, Department of Justice, Washington, D. C., for respondent-appellee.

Before CASTLE, Senior Circuit Judge, CUMMINGS, Circuit Judge, and CAMPBELL, Senior District Judge.*

* Senior District Judge Campbell of the Northern District of Illinois is sitting by designation.

CASTLE, Senior Circuit Judge.

The petitioner-appellant, Fred W. Amend Co. (hereinafter referred to as taxpayer), prosecutes this appeal from a decision of the Tax Court [1] which sustained the disallowance by the Commissioner of Internal Revenue, respondent-appellee, of deductions in the amounts of $5,500 and $6,200, respectively, claimed by the taxpayer on its income tax returns for its fiscal years ended October 31, 1964, and 1965. The disallowance resulted in the assessment of income tax deficiencies for those years. The deductions represent payments made by the taxpayer corporation to R. M. Halverstadt, a Christian Science practitioner, which taxpayer claimed as business expenses.

The record discloses that no material factual disputes were presented for resolution by the Tax Court. The taxpayer's principal contention on appeal is that the Tax Court applied incorrect legal criteria in reaching its conclusion that the payments involved did not qualify for deduction as business expenses under Section 162(a) of the Internal Revenue Code of 1954 (26 U.S.C.A. § 162(a)).

The pertinent and material facts, as they appear from the stipulation of the parties and the testimony and documentary evidence adduced at the hearing of the matter, are set forth in detail in the Tax Court's opinion. We summarize them as follows. Taxpayer, an Illinois corporation, manufactures and distributes jellied candies. It was organized by Fred W. Amend in 1921. He held the offices of president and treasurer until 1956 when his son-in-law became president. Amend remained as treasurer and became chairman of the board of directors. During the years in question Amend and his wife owned approximately 47½ per cent of the corporation's common stock. Unrelated stockholders held but 29% of such stock. Although Amend had reached the age of 73 years he enjoyed very good health and remained active in a supervisory role with respect to the corporation's business activities.

Beginning in 1954, Amend had utilized the services of R. M. Halverstadt, a Christian Science practitioner, for consultations with respect to personal and business problems. Charges for consultations were ordinarily three dollars. The taxpayer reimbursed Amend for such consultations that related to business problems. In 1961 the taxpayer adopted a resolution authorizing Amend to arrange for the employment of a Christian Science practitioner by the company on such terms as Amend considered appropriate and in the best interests of the corporation, the practitioner to serve:

> "as a consultant for employees with respect to matters which so disturb them as to handicap them in performing their services for the company, and also as a consultant of the officers as to the best approach to corporate problems".

Amend thereupon retained Halverstadt for the taxpayer and fixed his compensation at $400 per month. Amend increased the compensation to $5,500 per year for 1964 and then later to $6,200. None of the taxpayer's lower ranking employees were informed of the service available from Halverstadt. And, of the taxpayer's executives, only Amend availed himself of the service. He would consult with Halverstadt either by letter, telephone, or personal meetings and define the problem. The letters were regarded as confidential, and at Amend's request were immediately destroyed by Halverstadt after he read and digested them. During the tax years in question, the business problems Amend brought to Halverstadt's attention related to personnel, office relationships, sales, production, new machinery, financing and labor relations. The practitioner offered no specific or concrete solutions. His procedure was to so interrogate Amend as to bring out the different elements involved, and thus to clari-

---

1. The Tax Court's decision is officially reported at 55 T.C. 320.

fy Amend's thinking. In addition, Halverstadt relied upon the power of prayer to bring enlightenment concerning the problems to Amend and the taxpayer. He testified to daily prayerful intercession on behalf of the taxpayer's organization; that he prayed for a solution to the given problem through spiritual clarification—that Amend or the taxpayer's organization be given the right idea.

The taxpayer's secretary and general counsel testified that, in his opinion, the consultations tended to produce in Amend a more detached and calm mind, judgments less affected by emotions, a better grasp of the subject matter and generally sound decisions, all of which resulted in benefit to the taxpayer.

The Tax Court found that through the insight provided by Halverstadt's interrogation Amend was enabled to approach problems with detachment and new understanding but that Halverstadt never offered concrete solutions to any of the matters discussed. Instead, that after exploring a problem via the questioning process, Halverstadt, through prayer sought to invoke the presence of the Divine Mind—the spiritual awareness needed for success in temporal activities according to Christian Science teachings.

It is apparent that Halverstadt offered no business advice, as such. The Tax Court concluded that it was not Amend's skills as a businessman which Halverstadt sought to enhance. Rather, what was sought was a state of harmony in which Amend's business thinking would be brought into conformity with an ordered universe governed by the Christian Science concept of the Divine Mind. Accordingly, the court concluded that the benefits derived from Halverstadt's services were inherently personal to Amend, and thus by virtue of the proscription of Section 262 of the Internal Revenue Act of 1954 (26 U.S.C.A. §

262) [2] not susceptible to qualification as "business expenses" under Section 162.

Under Section 162 "ordinary and necessary" expenses paid or incurred in carrying on a trade or business are deductible in computing taxable income. But such deductions are a matter of legislative grace, and unless the claimed deduction comes clearly within the scope of the statute it is not to be allowed. Deputy v. DuPont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416. The burden to make that showing rests upon the taxpayer. International Trading Co. v. C. I. R., 7 Cir., 275 F.2d 578, 584.

The taxpayer urges, in substance, that because its business problems created the occasions for and were the origin of the services performed by Halverstadt in connection with Amend's consultations with Halverstadt, this factor serves to distinguish the expense here involved [3] from a personal expense attributable to Amend and qualify it for deduction as an ordinary and necessary business expense of the corporation. But the taxpayer overlooks that "origin" alone is not the sole determinative factor. While it is a basic restriction upon the availability of a Section 162 deduction that the expense item involved must be one that has a busines origin, and must be one directly connected with or proximately resulting from a business activity of the taxpayer (Kornhauser v. United States, 276 U.S. 145, 153, 48 S.Ct. 219, 72 L.Ed. 505), the inquiry does not end there. It is of equal importance that the nature of the particular expense is such that places it beyond the thrust of the bar of Section 262. United States v. Gilmore, 372 U.S. 39, 45–46, 83 S.Ct. 623, 9 L.Ed.2d 570. And, with respect to this latter factor, we are of the opinion that the record herein amply supports the finding and conclusion of the Tax Court that the services performed by Halverstadt were

2. § 262 provides that in computing taxable income no deduction, except as otherwise expressly provided, shall be allowed for "personal, . . . expenses".

3. The record discloses that Amend personally paid Halverstadt for those consultations during the tax years here involved which did not relate to a business problem of the corporation.

by their nature inherently personal to Amend.

 We have considered the additional contentions made by the taxpayer but find them equally without merit. Taxpayer's alternative argument that the expenditures are deductible as an addition to the regular compensation paid Amend is without support on the record. There is no evidence that the payments to Halverstadt were intended as compensation to Amend. And, apart from the question of whether the issue was properly raised below, taxpayer's additional argument that the payments it made to Halverstadt qualify as a "medical expense" business deduction is unpersuasive. Amend testified that he enjoyed very good health and that all of the taxpayer's personnel was covered by adequate medical and hospital insurance supplied by the taxpayer through an insurance carrier.

The decision of the Tax Court is affirmed.

Affirmed.