## ROBERT V. RAFTER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 2044–67, 3976–68.   Filed April 2, 1973.

Robert V. Rafter, pro se.
*Marvin A. Fein*, for the respondent.

FEATHERSTON, *Judge:* Respondent has determined deficiencies in petitioner's Federal income taxes in the following amounts:

| Docket No. | Year | Amount |
|---|---|---|
| 2044–67 | 1963 | $350.10 |
|  | 1964 | 298.37 |
|  | 1965 | 721.40 |
| 3976–68 | 1966 | 1,497.53 |

Concessions having been made, the following issues are presented for decision:

(1) Whether certain litigation expenses were incurred by petitioner in the carrying on of a trade or business within the meaning of section 162(a)[1] or in the production or collection of income within the meaning of section 212(1);

(2) With regard to petitioner's representation of two clients in

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.

1966, whether he paid or incurred trade or business expenses in excess of $70 within the meaning of section 162(a) ; and

(3) Whether petitioner is entitled to a casualty loss deduction for 1966 under section 165 as a result of the attachment of his automobile by a sheriff.

FINDINGS OF FACT

GENERAL

Petitioner filed his Federal income tax returns for 1963 through 1966 with the district director of internal revenue, Hartford, Conn. He resided in Weston, Conn., when his petitions were filed.

For 1964, 1965, and 1966, petitioner, in preparing his Federal income tax returns, used the accrual method of accounting with respect to his purported practice of law. Previously, petitioner had used the cash receipts and disbursements method, and this change in method of accounting was made without the permission of the Commissioner of Internal Revenue.

Petitioner is an attorney admitted to practice before the Supreme Court of the State of New York and the U.S. District Court for the Southern District of New York. Throughout the years in issue, petitioner paid annual rent of $60 for a mail drop and answering service at 150 Broadway, New York, N.Y. The record does not show that, during the period here in controversy, he maintained a law office or represented any clients until December of 1966.

During the designated time periods, petitioner was employed as follows:

| | |
|---|---|
| 1961—September 1963 | Insurance Co. of North America |
| September 1963—October 1963 | Law firm of Dominick Cornella |
| February 1964 (1 or 2 days) | Zurich Insurance Co. |
| April 1964—December 1965 | Nationwide Insurance Co. |
| February 1966—November 1966 | Legal Aid Society, Westchester County, New York |
| April 1967—June 1967 | Matthew Bender & Co. |

On his Federal income tax returns for 1963 through 1966, petitioner listed his principal business activity as the practice of law and claimed as expenses related thereto deductions ranging in total amounts from $2,420 up to $3,669. For 1963 through 1965, petitioner reported no income from the practice of law, and, in 1966, he reported $1,670. Also on his 1966 return, petitioner claimed he discovered on November 21,

1966, a "loss by theft" in the amount of $3,500, such amount representing the adjusted cost basis of his 1964 Ford, "wrongfully taken 12-64 pursuant to falsified writ."

In the notice of deficiency covering 1963 through 1965, respondent disallowed all the claimed expenses relating to the practice of law. In the notice of deficiency for 1966, respondent allowed petitioner a $70 deduction for law practice expenses but disallowed all business expense deductions in excess of that amount. Petitioner's casualty loss deduction for 1966 was disallowed on the ground that the alleged theft was not shown to be a theft or casualty within the meaning of section 165 or, alternatively, that no deductible loss was sustained during 1966.

### Litigation Expenses and Theft Loss Issues

During the years here in controversy, petitioner was the plaintiff in six lawsuits and was the defendant in two others. In these suits, petitioner incurred certain automobile, rent, court fee, printing, stationery, stenographic, and telephone expenses, some of which remained unpaid at the time of the trial of this case. This litigation falls within three generally unrelated categories: (1) The conspiracy litigation involving primarily Donald C. Hays and Alexander R. Kellegrew, (2) a complaint filed against Zurich Insurance Co., and (3) the litigation involving the Spiegelmans' claims against petitioner and related matters. The claim to a casualty loss deduction (issue (3), above) is based on certain facts involved in this last category of litigation, the Spiegelman suits.

1. *The conspiracy litigation.*—While petitioner was employed as a general attorney for the Carrier Corp., a Delaware corporation with offices in New York, he filed a complaint on April 9, 1951, against Mary T. Wilson (sometimes hereinafter Wilson) in the Supreme Court of the State of New York, County of New York. The complaint demanded payment of legal fees, in addition to $8,000 petitioner had already received, for settling the estate of Wilson's deceased husband. In an answer and amended answer, prepared by attorneys Donald C. Hays and Alexander R. Kellegrew (Hays and Kellegrew), Wilson denied liability for any further fees and counterclaimed and demanded judgment for fees already paid to petitioner, allegedly in excess of the reasonable value of his services. The amended answer also requested an accounting for sums allegedly paid to petitioner during the administration of the Wilson estate. A jury verdict was ultimately rendered against petitioner, and judgment was entered on October 29, 1951, with only costs awarded in favor of Wilson.

At some time prior to August 15, 1953, petitioner filed a lawsuit against Anglo-Iranian Oil Co., Ltd., and other parties. On November 27, 1953, petitioner filed a complaint in the U.S. District Court for

the Southern District of New York, under the Sherman Antitrust Act, against Anglo-Iranian Oil Co., Ltd., Lloyd's of London, W. R. Grace & Co., and Alexander Kellegrew. The details of this action are not shown. An order of dismissal as to all defendants in the antitrust suit was entered on September 16, 1954.

In 1953, when the above suit was filed, Lloyd's of London was a client of the law firm of Mendes & Mount, by whom petitioner was then employed. As a result of petitioner's having brought suit against one of his firm's clients, his employment was terminated by Mendes & Mount on August 15, 1953.

On March 24, 1961, petitioner initiated an action against Hays and Kellegrew before the Supreme Court of the State of New York, County of Westchester. Petitioner subsequently amended his complaint to join Manufacturers [Hanover] Trust Co. (MTC) as another defendant. This action related back to Hays' and Kellegrew's representation of Mary T. Wilson in 1951. Petitioner joined MTC as a defendant, alleging that MTC had arranged for Wilson's defense in the prior lawsuit and had referred her to Hays' and Kellegrew's law firm. According to an allegation contained in petitioner's second amended complaint:

Eighth: Defendants and others, in pursuance of a conspiracy or combination for that purpose, fraudulently made use of said action at law to injure plaintiff in his profession and to effect an unjustifiable interference with plaintiff's right to pursue his lawful occupation and to receive the earnings of his industry.

Petitioner alleged that as a result of false statements and two false counterclaims made in the answer and amended answer in the Wilson suit, petitioner's employment with the Carrier Corp. was terminated on October 12, 1951. Petitioner further alleged that he had been damaged in his profession and reputation, and therefore demanded "such sums of money as the facts evidence and circumstances warrant."

The complaint against Hays and Kellegrew was dismissed as barred by the statute of limitations. At trial, upon a motion made by MTC, petitioner's complaint was ordered dismissed on or about November 4, 1963. Petitioner paid expenses directly related to this action of $226.62 in 1963, $61 in 1964, and $35 in 1965.

By motion served December 31, 1963, petitioner requested the U.S. District Court for the Southern District of New York to vacate the order of dismissal entered in petitioner's 1953 action against Anglo-Iranian Oil Co., Ltd., Kellegrew, and others. After petitioner's motion was denied without opinion on January 22, 1964, he entered an appeal, and on June 3, 1964, the U.S. Court of Appeals for the Second Circuit affirmed the District Court without opinion. Later, a petition for a writ of certiorari was denied. Petitioner paid expenses of $336.86 in these proceedings.

On July 6, 1964, petitioner filed a complaint in the Supreme Court

of the State of New York, County of Westchester, against Hays and Kellegrew, as well as their law firm, Gifford, Woody, Carter & Hays. Most of the allegations in this complaint are similar to the allegations contained in the 1961 complaint filed against Hays and Kellegrew. On October 6, 1964, the trial court granted the defendants' motion to dismiss with respect to the individual defendants on the ground of res judicata and with respect to the defendant law firm on the ground that the statute of limitations barred the action. Petitioner filed a notice of appeal in November 1964. The record does not show that this appeal was perfected. Petitioner paid expenses of $50 in this proceeding.

On or about April 25, 1965, petitioner filed a complaint in the U.S. District Court for the Southern District of New York, naming as defendants MTC, Carrier Corp., the law firm of Gifford, Woody, Carter & Hays, and Hays individually. The first cause of action alleged in the complaint was based on the Sherman and Clayton Antitrust Acts. The alleged facts supporting the first cause of action relate back to petitioner's 1953 antitrust action against Anglo-Iranian Oil Co., Ltd., Kellegrew, and others, and his subsequent suits against Wilson, Hays, and Kellegrew. The second cause of action substantially restated the allegations previously described in regard to petitioner's suits against Hays and Kellegrew.

With respect to the first cause of action, petitioner alleged that the defendants, and others, conspired to prevent him from consummating a business deal in 1951 whereby petitioner would have sold or leased oil tankers to the National Iranian Oil Co. of Iran in exchange for $11 million. Specifically, petitioner alleged:

9. That beginning about January of 1946, the exact date being unknown, and continuing thereafter up to and including the date of filing of this complaint, the defendants and the Central Intelligence Agency and its predecessor, the Office of Strategic Services, and others, including the financial community in New York City, banking and insurance, have been, and are now, monopolizing and have been, and are now, engaged in an unlawful combination and conspiracy to restrain and monopolize the hereinbefore described foreign trade and commerce.

In June of 1965, the District Court issued an order staying the aforesaid action until petitioner posted a bond in the amount of $1,500. No further prosecution of this action is shown. Petitioner incurred expenses of $301.10, but paid only $21.91, relating to the filing of this complaint.

2. *The complaint against Zurich Insurance Co.*—In February of 1964, petitioner was employed for 1 or 2 days by the Zurich Insurance Co. (Zurich). His employment was promptly terminated when Zurich learned that petitioner had brought the suit against a client of the law firm by which he had been employed.

Petitioner filed a complaint, dated December 21, 1964, against Zurich in the U.S. District Court for the Southern District of New York. In his complaint, he alleged that Zurich had agreed to issue group life and medical insurance to him and had breached its promise following the termination of his employment. In addition, or as an alternative to specific performance, petitioner sought damages of $30,000. ·

In its answer to petitioner's complaint, Zurich denied petitioner's jurisdictional allegations and alleged that "pursuant to the terms of his employment, [petitioner] was permitted, upon termination of his employment, without evidence of insurability, to convert the Group Life and Major Medical benefits to individual policies of Life and Hospital-Surgical benefits; provided that written application and annual premium payments for each converted policy was [sic] made within thirty (30) days after the termination of * * * [petitioner's] employment." And further, "That the * * * [petitioner] has made written application for the conversion of the policies referred to but has failed to make any payment on the annual premium of such policies."

Petitioner's complaint was dismissed for lack of jurisdiction. With regard to the Zurich action, petitioner paid expenses of $18.36 in 1964 and $16.36 in 1965.

3. *The Spiegelman litigation.*—By a writ of attachment, summons, and complaint executed December 10, 1964, petitioner's former landlords, Lee and Joan Spiegelman (the Spiegelmans), commenced an action against petitioner before the Court of Common Pleas for the County of Fairfield, Conn. The Spiegelmans sought payment for alleged overdue rent and damages by petitioner to the leased premises. The Spiegelmans were represented by the law firm of Koizim & Davidoff.

Process of the writ, summons, and complaint was served by Fairfield County Deputy Sheriff Floyd Blackmon (Blackmon), and, on or about December 17, 1964, petitioner's bank account was garnished and his 1964 Ford automobile was attached. Petitioner's automobile was eventually repossessed June 2, 1965, by a prior lienholder, the Fairfield County Trust Co. (FCTC), because petitioner was in arrears in making payments on a loan from FCTC. Beginning in December of 1964, petitioner occasionally leased automobiles for which he incurred and paid expenses totaling $31.78 in 1964, incurred $2,797.34 and paid $1,023.49 in 1965, and incurred $1,555.53 and paid $1,020.27 in 1966.

On May 13, 1965, the Spiegelmans withdrew their first action against petitioner but instituted, on the same day, an identical second action in which the same attachment and garnishment were made. A bill of costs was entered against the Spiegelmans in the first action. The sec-

ond Spiegelman action against petitioner was withdrawn in January of 1968. In handling his defense against the Spiegelman suits, petitioner paid $9.30 in 1964, $29 in 1965, and $16 in 1966.

On June 25, 1965, petitioner commenced an action for $20,000 damages against Newark Insurance Co. (Newark), as surety on a sheriff's penal bond for Blackmon in the amount of $10,000. In his complaint, petitioner alleged that Newark had bonded the sheriff and deputy sheriff (Blackmon) of Fairfield County and that Blackmon wrongfully seized property of petitioner pursuant to invalid warrants of attachment issued in the first and second Spiegelman actions. The U.S. District Court for the District of Connecticut granted Newark's motion to dismiss for lack of jurisdiction on October 22, 1965. The Court of Appeals for the Second Circuit affirmed per curiam on January 20, 1966. A petition for writ of certiorari to the U.S. Supreme Court was filed on June 16, 1966. In the Newark suit, petitioner incurred expenses totaling $635.60 of which he paid $51.86 in 1965 and $180.40 in 1966.

On May 31, 1966, petitioner instituted an action for damages of $50,000 against Blackmon and the law firm of Koizim & Davidoff in the U.S. District Court for the District of Connecticut. Petitioner alleged that the defendants therein conspired in the Spiegelman actions to deprive him of his civil rights under 42 U.S.C. sections 1983 and 1985. The District Court granted defendants' motion for summary judgment and entered judgment on April 27, 1967, awarding defendants their costs. In this suit, petitioner incurred $216 but paid only $30 in expenses in 1966.

### Business Expense Issue

During the month of December 1966, petitioner actively handled an appeal to modify a custody provision in a divorce decree. Petitioner's initial retainer fee was $670, and on or about December 12, 1967, petitioner submitted a statement for additional services rendered throughout most of 1967. Petitioner incurred $265.97 in expenses in the case, but has not shown he paid more than the $70 allowed by respondent.

### OPINION

### Issue 1. Litigation Expenses

Section 162(a)[2] allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in "carrying on any

---

[2] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *

trade or business." Closely related to that provision, section 212(1)[3] allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year "for the production or collection of income." While both sections refer to the same kinds of deductible expenses, this latter section makes those deductions allowable with respect to income-producing or profit-seeking activities which do not constitute a trade or business. *United States* v. *Gilmore*, 372 U.S. 39, 44–45 (1963); *Trust of Bingham* v. *Commissioner*, 325 U.S. 365, 374 (1945). The purpose of the two sections was "to place all income-producing activities on an equal footing" in terms of allowable deductions. *United States* v. *Gilmore, supra* at 49.

Testing the deductibility of litigation expenses presents a special problem. Ordinarily, the litigation in which such expenses are incurred is at least one step removed from the actual conduct of the taxpayer's trade or business or income-producing activity. Yet because the litigation may be both "ordinary and necessary," as those terms are used in sections 162(a) and 212(1), both sections have been construed to permit deductions if the litigation is *directly connected with, or proximately related to*, the taxpayer's profit-seeking activity. *Trust of Bingham* v. *Commissioner, supra* at 373–374; *Kornhauser* v. *United States*, 276 U.S. 145, 153 (1928). However, both sections must be applied in the light of section 262[4] which disallows deductions for expenses that are inherently personal in nature. *United States* v. *Gilmore, supra* at 45–46; *Fred W. Amend Co.* v. *Commissioner*, 454 F. 2d 399, 402–403 (C.A. 7, 1971), affirming 55 T.C. 320 (1970).

In determining whether litigation expenses have a sufficiently close relationship to the profit-seeking activities referred to in sections 162 (a) and 212(1), the controlling criteria are the origin and character of the controversy which led to the expense rather than either the potential consequences of the failure to prosecute or defend the litigation, *United States* v. *Gilmore, supra* at 49, or the primary purpose of the litigation, *Woodward* v. *Commissioner*, 397 U.S. 572 (1970), and *United States* v. *Hilton Hotels*, 397 U.S. 580 (1970). The issue as to what was the origin or character of the controversy is basically a factual one. Cf. *Commission* v. *Heininger*, 320 U.S. 467, 475 (1943). Its resolution requires consideration of all the facts, including the issues stated, the defenses asserted, and the ulterior objectives, if any, of the litigation. See *Morgan's Estate* v. *Commissioner*, 332 F. 2d 144, 151 (C.A. 5, 1964).

---

[3] SEC. 212. EXPENSES FOR PRODUCTION OF INCOME.

In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

(1) for the production or collection of income;

[4] SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES.

Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.

In the instant case, the record consists of the pleadings and judgments in the various lawsuits in which petitioner engaged, petitioner's own testimony identifying various documents and detailing the incurred expenses, and the remotely relevant testimony of certain other witnesses.[5] Apart from copies of documents included in the files on the various lawsuits in which he participated, petitioner presented very little, if any, testimony as to his own business or other profit-seeking activities, the relationship of the lawsuits to any such activities, or the background of the litigation in which the expenses were incurred. We have based our Findings as to the nature and character of the lawsuits largely upon the exhibits introduced in evidence.[6]

We think it apparent that the disputed litigation expenses are not deductible on the theory that, as petitioner appears to contend, they were incurred in the practice of law as such. None of the lawsuits related to collection of fees or expenses in cases which he had handled as a lawyer. Indeed, except for late 1966, petitioner has not shown that he handled any business as an attorney for others during the years before the Court, and his income tax returns reflect no income from such source. While it is true that petitioner sought money damages in the actions, we do not think the prosecution of these lawsuits by petitioner as attorney-plaintiff for the vindication of real or fancied personal wrongs constituted a "business" within the meaning of section 162(a).

Nor do we think the several lawsuits in which petitioner was involved bear the kind of relationship to any business or other profit-seeking activity on the part of petitioner that will support a deduction under either section 162(a) or section 212(1). As to the suits which we have referred to in our Findings as the conspiracy litigation, petitioner's first action against Hays and Kellegrew, allegedly involving

---

[5] Approximately 3 weeks after the trial of these cases, petitioner moved to reopen the record for the testimony of three witnesses who did not respond to subpoenas. The motion was denied, and petitioner filed a motion in the U.S. Supreme Court for leave to file a petition for a writ of mandamus. This motion was denied. *Rafter* v. *Hoyt*, 401 U.S. 1008. After these cases were reassigned, without objection, by order served Jan. 17, 1973, petitioner's motion "for a rehearing, reargument, retrial, further trial and reconsideration" was considered. The motion was directed primarily toward reopening the record for the testimony of the three witnesses who did not respond to subpoenas issued to them at the time of the trial. However, at the close of the trial, petitioner announced that he rested his case even though these three witnesses had not been heard, and in support of his motion he made no showing as to what those witnesses would have testified to or that they had evidence which was not already available to petitioner. Since petitioner was a party to all the proceedings in which the disputed expenses were incurred, he was in a better position than anyone else to know and testify as to the relationship of the suits to any income-producing activity on his part. For these and other reasons, the motion was denied.

[6] As noted in our Findings, petitioner filed his returns for 1963 and prior years using the cash method of accounting but changed to the accrual method for his 1964, 1965, and 1966 returns, thus claiming deductions for various bills which he did not actually pay. However, he did not seek or obtain the permission of the Commissioner of Internal Revenue for this change in accounting method as required by sec. 446(e). On this ground alone, the litigation and automobile rental expenses which petitioner did not actually pay are not deductible. *Arthur L. Kniffen*, 39 T.C. 553, 566 (1962).

"an unjustifiable interference with * * * [petitioner's] right to pursue his lawful occupation and to receive the earnings of his industry," was dismissed in 1963 as barred by the statute of limitations. Later suits, involving additional defendants and more elaborate conspiratorial theories, were grounded on essentially the same allegations and were likewise dismissed or were not prosecuted.

All of these suits appear to have stemmed from petitioner's experience with Hays and Kellegrew in the litigation over the fees in the Wilson case in 1951. From the facts of record, it appears that the 1951 Wilson case was prompted by a genuine profit motive and was proximately related to his law business. However, to say that the bona fide business character of the Wilson claim should carry forward and color litigation involving different parties and different disputes more than a decade later would hinge deductibility in the years here in controversy on "remote and multiple causations." *Lykes* v. *United States*, 343 U.S. 118, 128 (Justice Jackson's dissent) (1952). The nexus between the conspiracy suits and the Wilson suit is too indirect or tenuous to assist petitioner's cause in the instant case.

We recognize that, in limited circumstances, expenditures made to protect the existence of an established business or income-producing activity may be deductible. *Commissioner* v. *Heininger, supra; C. Doris H. Pepper*, 36 T.C. 886, 894 (1961); *Waldo Salt*, 18 T.C. 182, 186 (1952); cf. *Lewis* v. *Commissioner*, 253 F. 2d 821, 826 (C.A. 2, 1958), affirming 27 T.C. 158 (1956); *Bonney* v. *Commissioner*, 247 F. 2d 237, 239 (C.A. 2, 1957), affirming 24 T.C. 199 (1955). To be deductible, however, such expenditures must involve a matter directly or proximately related to the taxpayer's profit-seeking activity. If the objective of the litigation is merely to vindicate the personal reputation or good name of the taxpayer, the expenses of such litigation are nondeductible personal expenses. *Robert Edward Kleinschmidt*, 12 T.C. 921, 924–925 (1949). See also *Dyer* v. *Commissioner*, 352 F. 2d 948, 952 (C.A. 8, 1965), affirming a Memorandum Opinion of this Court.

Moreover, if the origin of the matter which is the subject of the litigation is personal, the related expenses are not deductible even though the taxpayer's business may suffer. *Nadiak* v. *Commissioner*, 356 F. 2d 911, 912 (C.A. 2, 1966), affirming a Memorandum Opinion of this Court. And if the effect of another person's action upon the taxpayer's trade or business, "harmful though it may be, is merely incidental to the harm which he otherwise suffers," all expenses incurred in the case may be regarded as personal and nondeductible. *Lewis* v. *Commissioner, supra* at 826.

As noted above, during the years before the Court, except for late 1966, petitioner has shown neither that he was engaged in the practice of law so that the expenses could be related to an ongoing business

nor that the expenses in issue were in any way related to a profit-seeking activity. Nor has he shown, if we are to assume that his law business had previously failed, how the successful prosecution of any of this litigation would have rehabilitated him in the practice of law or any other business endeavor. That petitioner persisted in this long series of uniformly unsuccessful lawsuits convinces us that his activities were "more permeated with the fertility of crusade than the objectivity of advocacy," *Dyer* v. *Commissioner, supra* at 952. That he continued to file suits on claims barred by res judicata or the statute of limitations, joining Hays or Kellegrew, or both, in all such suits, leads us to the conclusion that these proceedings were filed in pursuit of a personal vendetta rather than to protect or defend any business or other profit-seeking activity. *Burrell E. Davis,* 34 T.C. 586, 587 (1960), acq. 1963-2 C.B. 4.

The Zurich Insurance Co. case filed in the U.S. District Court for the Southern District of New York pertained to a dispute over an insurance policy to which petitioner claimed he was entitled as a result of his employment with that company for a period of 1 or 2 days in 1964. It is true that petitioner's employment with Zurich may be regarded as a trade or business for the purposes of section 162(a), cf. *Trent* v. *Commissioner,* 291 F. 2d 669, 674 (C.A. 2, 1961) ; *Samuel R. Milbank,* 51 T.C. 805, 816-817 (1969), and cases cited, and that the allegations in the complaint suggest that the origin of the claim was a dispute over petitioner's rights under his employment contract. However, notwithstanding these facts, we do not think the expenses are deductible.

The District Court's dismissal of the action for lack of jurisdiction was apparently grounded on the conclusion that the suit was one for specific performance or, alternatively, for damages equal to the value (less than the $10,000 minimum for jurisdiction based on diversity of citizenship) of the policy. Since the value of the policy evidently was not taxable as compensation for petitioner's employment services, section 79, the cost of attempting to obtain the policy is not deductible. See sec. 265(1).[7] Such cost is regarded as a personal expense in that it involved an attempt to collect income or property which would be nontaxable in petitioner's hands. Cf. *Joseph D. Murphy,* 48 T.C. 569,

---

[7] SEC. 265. EXPENSES AND INTEREST RELATING TO TAX-EXEMPT INCOME.
No deduction shall be allowed for—
    (1) EXPENSES.—Any amount otherwise allowable as a deduction which is allocable to one or more classes of income other than interest (whether or not any amount of income of that class or classes is received or accrued) wholly exempt from the taxes imposed by this subtitle, * * *
If the policy did not fall within the provisions of sec. 79, the premiums paid by his employer (not reported as taxable income in petitioner's 1964 return) would be taxable to petitioner, sec. 1.61-2(d)(2)(ii), Income Tax Regs., and would certainly be equal to, or would exceed, the relatively small amounts claimed as deductions for expenses paid in this suit. See Rev. Rul. 66-262, 1966-2 C.B. 105.

570 (1967) (sec. 104(a)(2)); *National Engraving Co.*, 3 T.C. 178, 181 (1944) (predecessor of sec. 101). Moreover, the answer filed by Zurich Insurance Co. alleges that petitioner had filed an application for conversion of his rights under the group policy to an individual one but failed to pay any premiums on the policy. Petitioner has not shown that the company's allegations were not true. From the company's allegations, the absence of evidence that petitioner pursued the matter beyond the District Court dismissal, the magnitude of the damages claimed, and the apparent lack of merit in his position, we infer that the true origin of this case was petitioner's desire to retaliate against the company for the abrupt termination of his employment. For this additional reason, his expenditures for this lawsuit must be regarded as personal ones.

The genesis of the Spiegelman group of cases was petitioner's failure to pay the rent on the apartment in which he lived. This led ultimately to his suits against the deputy sheriff who attached his automobile and the company which wrote the sheriff's bond. These claims have a purely personal origin. Cf. *United States* v. *Gilmore, supra.* In no way are they proximately related to any trade or business or to any profit-seeking activity. The expenses incurred in these suits are, therefore, nondeductible personal outlays within the meaning of section 262.

We hold that petitioner may deduct none of the disputed litigation expenses.

### Issue 2. Business Expenses

In our Findings and footnote 6 *supra*, we have pointed out that petitioner filed his 1963 and prior income tax returns using the cash receipts and disbursements method of accounting. For the next 3 years, including 1966, he purported to use the accrual method, but he failed to obtain the permission of the Commissioner of Internal Revenue, as required by section 446(e), for the change. Therefore, he may deduct only the amounts of the expenses that he actually paid in connection with his practice of law. He may not deduct amounts for which he incurred obligations but did not pay. Respondent has allowed a deduction for the full amount of the expenses paid by petitioner in connection with his law practice in 1966.

### Issue 3. Theft Loss

Section 165(a) allows as a deduction any loss sustained during the taxable year and "not compensated for by insurance or otherwise." In the case of an individual, section 165(c)(3) limits such deduction in the case of a theft, however, to "losses of property not connected with a trade or business." The amount of the loss allowable as a deduc-

tion may not exceed the taxpayer's adjusted basis for the property. Sec. 1.165–1(c), Income Tax Regs.

Relying upon section 165, petitioner claims a $3,500 theft loss for 1966.[3] It appears that, during December 1964, his Ford automobile was attached pursuant to a writ issued in the first Spiegelman rent collection suit. In June of 1965, while the automobile was still under the attachment writ, FCTC, which financed the purchase of the automobile, repossessed it because petitioner was in arrears in making his payments. Petitioner contends that the original writ of attachment was invalid and that he, therefore, suffered a theft loss in 1966 when the invalidity of the attachment writ was discovered.

Petitioner has not shown that he suffered a deductible loss. Regardless of whether the writ of attachment in the Spiegelman suit was valid, neither the levy on the automobile in that suit nor the repossession by FCTC was a "theft" within the meaning of section 165(c)(3). Both the Spiegelmans and FCTC proceeded under a lawful authorization or at least the color of legal authority, and no criminal intent on the part of either has been shown. *Johnson* v. *United States*, 291 F. 2d 908, 909 (C.A. 8, 1961); *Aaron F. Vance*, 36 T.C. 547, 551–552 (1961); cf. *Farcasanu* v. *Commissioner* 436 F. 2d 146, 149 (C.A.D.C. 1970), affirming per curiam 50 T.C. 881 (1968). Therefore, petitioner is not entitled to a "theft" loss deduction.

Consistent with the foregoing,

> *Decision will be entered for the respondent in docket No. 2044–67.*
>
> *Decision will be entered under Rule 50 in docket No. 3976–68.*

[3] The provisions of sec. 165(c)(3) limiting allowable deductions to "losses of property" and the regulation keying the loss to the adjusted basis for the property require the denial of any deduction for the amounts expended for the rental of automobiles while petitioner's vehicle was held pursuant to the attachment.