T.C. Memo. 1997-498

UNITED STATES TAX COURT

DONALD VICTOR TESCHNER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23343-95.                           Filed November 5, 1997.

Donald Victor Teschner, pro se.

Nancy C. McCurley, for respondent.

MEMORANDUM OPINION

NAMEROFF, Special Trial Judge: This case was heard pursuant
to the provisions of section 7443A(b)(3)[1] and Rules 180, 181, and
182. Respondent determined a deficiency in petitioner's 1991

_____

[1] All section references are to the Internal Revenue Code
in effect for the year at issue. All Rule references are to the
Tax Court Rules of Practice and Procedure.

Federal income tax in the amount of $4,640 and an accuracy-related penalty under section 6662(a) in the amount of $928.

After concessions by respondent, the issues for decision are:  (1) Whether petitioner derived income as an employee or as an independent contractor during 1991; (2) whether petitioner is entitled to deduct certain business expenses in excess of the amounts allowed by respondent; and (3) whether petitioner is liable for the section 6662 accuracy-related penalty.

### Background

Some of the facts have been stipulated, and they are so found.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.  At the time he filed his petition, petitioner resided in Los Angeles, California.

Petitioner is a professional musician.  During 1991, petitioner provided services to rock star Rod Stewart (Stewart). He played various instruments for Stewart's band, including guitar, violin, and mandolin.  Petitioner was not a permanent member of the band and was not retained through written contract. Rather, he was called upon by Stewart to perform on an as-needed basis through oral agreement.

During most of 1991, petitioner was on tour with Stewart and other members of the band.  He traveled from city to city, staying in hotels and living out of suitcases for long stretches of time.  He traveled with the band for 13 months to cities in the United States, Europe, Asia, and Australia.

Petitioner's work schedule was set by Stewart and was primarily based on practice, concert, and travel schedules.

Moreover, Stewart heavily influenced petitioner's stage dress. While Stewart dictated which songs petitioner played, he was permitted to improvise chords within the given songs. After work hours, petitioner was free to do his "own thing". For the 1991 year, petitioner earned $76,005 for his work with the Stewart band. This amount was reported as Form W-2 income, and taxes were withheld.[2]

Petitioner did not perform work exclusively for Stewart. During 1991, petitioner received approximately $1,600 in wages from three other sources[3] from performances with other bands. For example, petitioner received about $470 for his work on the Stan Rigway record "Wall of Voo Doo". All of the above income was reported as Form W-2 wages, and income taxes were withheld.

During 1991, petitioner purchased various items that he believed were necessary for his work. For example, petitioner purchased two of every instrument that he played while on tour with the Stewart band. This insured that petitioner always had a spare instrument, just in case one became nonoperational. Moreover, petitioner purchased "flashy" and "loud" clothes to wear during his performances. Petitioner also purchased "films and records" as research material to familiarize himself with

_____

[2] Two Forms W-2 were issued to petitioner for his work with the Stewart band: One from Stewart Annoyances, Ltd., and the other from Pebbles Music, Inc.

[3] The other sources were the David Geffen Co., Phonograph Record Manufacturing, and Talent Partners.

various songs or styles that he was to perform.  Petitioner was not reimbursed for any of these expenses.

Prior to joining the Stewart band, petitioner had leased a house in the Los Angeles area.  During 1991, petitioner paid rent of $920 per month to maintain this house.  Petitioner had a living arrangement with a fellow musician, Jonathan Currie (Currie), who needed a place to live.  Beginning in February 1991, and lasting approximately 2 years, Currie lived in petitioner's home and took care of petitioner's personal affairs while petitioner was on tour with the Stewart band.  In exchange for this service, Currie received free board and "a little bit of money".  This arrangement allowed petitioner to maintain his home and to avoid the hassles of moving.

The amounts claimed by petitioner on his Schedule A and allowed or disallowed by respondent for the 1991 taxable year are as follows:

| Expense | Claimed | Allowed in the notice of deficiency | Conceded by respondent | Disallowed |
|---|---|---|---|---|
| Auto. (local trans.) | $3,349 | $383 | -0- | $2,966 |
| Depreciation | 1,673 | 1,617 | $1,133 | (1,077) |
| Meals & ent. (@ 80%) | 3,110 | -0- | 1,103 | 2,007 |
| Office supplies | 219 | 15 | 118 | 86 |
| Photography | -0- | -0- | 324 | (324) |
| Prof. development | 422 | -0- | -0- | 422 |
| Prof. maintenance | 3,066 | -0- | -0- | 3,066 |
| Prof. supplies | 17,329 | 3,382 | -0- | 13,947 |
| Maintenance (laundry) | 655 | 728 | 156 | (229) |
| Research | 432 | -0- | [1]-0- | 432 |
| Telephone | 2,398 | -0- | -0- | 2,398 |
| Tools | -0- | -0- | 277 | (277) |
| Travel | 15,381 | -0- | 4,476 | 10,905 |
| Totals | 48,034 | 6,125 | 7,587 | 34,322 |

[1] Respondent's concession of this expense was included in amounts allowed for prof. supplies and tools.

Petitioner filed an amended return for 1991 reflecting two adjustments. First, petitioner changed his worker classification from employee to independent contractor. Second, petitioner claimed an additional $7,757 deduction for agent's commission expense. Respondent has not accepted either of these adjustments.

Petitioner had both his original and amended returns prepared by tax professionals. Petitioner gave the tax professionals the same documentation that he presented to the Court. Moreover, petitioner discussed with them all deductions claimed on the returns.

Discussion

Worker Classification

The first issue for our consideration is whether petitioner derived income as an employee or as an independent contractor during 1991. Respondent argues that petitioner derived all his income for 1991 as an employee, while petitioner asserts that he was an independent contractor.

Respondent's determination is presumed correct, and petitioner bears the burden of proving he is not an employee. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Whether an individual is an employee or an independent contractor is determined by examining relevant facts and circumstances and applying common law principles. Nationwide Mut. Ins. Co. v.

Darden, 503 U.S. 318, 323-324 (1992); Matthews v. Commissioner, 92 T.C. 351, 360 (1989), affd. 907 F.2d 1173 (D.C. Cir. 1990); Professional & Executive Leasing, Inc. v. Commissioner, 89 T.C. 225, 232 (1987), affd. 862 F.2d 751 (9th Cir. 1988).

Courts look to several factors to decide whether an employment relationship exists. Among them are the following: (1) The degree of control exercised by the principal over the manner in which work is performed; (2) the individual's investment in the facilities used; (3) the individual's opportunity for profit or loss; (4) whether or not the principal has the right to discharge the individual; (5) the permanency of the relationship; (6) whether the work performed is an integral part of the principal's regular business; and (7) the relationship the parties believe they are creating. United States v. Silk, 331 U.S. 704, 716 (1947); Simpson v. Commissioner, 64 T.C. 974, 984-985 (1975); sec. 31.3121(d)-1(c)(2), Employment Tax Regs. These factors are not weighted equally but must be evaluated according to their significance in each particular case. See Packard v. Commissioner, 63 T.C. 621, 630 (1975).

Although no one factor is dispositive, the employer's degree of control over the details of an individual's work is the most important consideration in determining the nature of the working relationship. E.g., Matthews v. Commissioner, supra at 361. An

employer-employee relationship exists when an employer retains the right to control the manner and means by which an individual performs services.  Nationwide Mut. Ins. Co. v. Darden, supra; Simpson v. Commissioner, supra; Ellison v. Commissioner, 55 T.C. 142, 152-153 (1970).

Petitioner received income from several activities.  We have divided the activities into two groups:  (1) Income from the Stewart band and (2) other income.

A. Income From the Stewart Band

Upon reviewing the entire record in light of the above factors, we hold that petitioner received income from his activity with the Stewart band as an employee during 1991. Several factors support our conclusion.

First, Stewart controlled how, when, and where petitioner was to perform his services.  Petitioner was required to tour, travel, and perform according to the band's scheduled performances.  Moreover, Stewart had influence over what petitioner wore on and off the stage, which instruments he brought with him and played, and which songs he performed.  While it is true that petitioner had some flexibility in choosing which chords to play, his ability to improvise was limited by the framework provided by the Stewart band.  Second, petitioner was an integral part of the band while on tour.  This fact suggests that an employment relationship existed.  Finally, while

petitioner testified that he believed he was an independent contractor, his actions suggested otherwise. Petitioner's original return, on which he claimed unreimbursed miscellaneous employee business expenses as a Schedule A adjustment, reflected the conclusion that he was an employee. Only after respondent's determination of the deficiency, including the application of the alternative minimum tax due to large itemized deductions, did petitioner and his new tax return preparer conclude that he should have reported his income and expenses on a Schedule C.

We acknowledge that some factors support a finding of an independent contractor relationship. For example, petitioner was required to provide his own tools and supplies, was not restricted in working for others, and was not a permanent member of the band. On the other hand, it appears from the evidence presented that Stewart paid for petitioner's transportation and hotel bills while on tour.[4] On balance, we are persuaded by those factors that support our position.

B. Other Income

We also find that petitioner received income from other activity as an employee. Petitioner failed to present any persuasive evidence to support a contrary finding and has

---

[4] The hotel bills received in evidence reflect substantial charges for bar, movies, and room service, but no charges for room rent. Moreover, there are no documents in evidence that suggest that petitioner paid for his own transportation while traveling with the band.

effectively conceded this issue.  See Rule 149(b).  While petitioner provided minimal detail about his income from other activity, we surmise that petitioner performed activities similar to those performed for the Stewart band.  In light of the fact that no contrary evidence was presented, we sustain respondent's determination on this issue.

Employee Business Expenses

We next consider whether petitioner is entitled to Schedule A deductions for various employee business expenses.  Deductions are a matter of legislative grace, and taxpayers must prove that they are entitled to those claimed.  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).  They must maintain adequate records to substantiate deduction amounts.  Sec. 6001; Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965).

Section 162(a) permits the deduction of "ordinary and necessary" expenses paid or incurred during the taxable year in carrying on any trade or business.  Generally, except as provided by section 274(d), when evidence shows that a taxpayer incurred a deductible expense, but the exact amount cannot be determined, the Court may approximate the amount.  Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  The Court, however, must have some basis upon which an estimate may be made.  Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Travel and meals and entertainment expenses are deductible if they are ordinary and necessary to a taxpayer's business. Sec. 162(a). Section 274(d), however, provides that no deduction will be allowed for travel expenses or any activity which is generally considered to constitute entertainment unless the taxpayer maintained records sufficient to establish: (1) The amount of each expense; (2) the time and place of the activity; (3) the business purpose of the activity; and (4) the business relationship to the taxpayer of persons entertained. Sec. 274(d). Meals in a restaurant are generally considered to be "entertainment" and governed by section 274(d). See, e.g., Matlock v. Commissioner, T.C. Memo. 1992-324. Section 274(d) is an exception to the Cohan rule and prohibits the estimation of these expenses. Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Reg., 50 Fed. Reg. 46014 (Nov. 6, 1985).

Expenditures for equipment having a useful life extending beyond the taxable year are capital and are nondeductible as business expenses. Ryman v. Commissioner, 51 T.C. 799, 802 (1969). Section 167, however, permits a depreciation deduction for property used in a trade or business. Depreciation on tangible property placed in service after December 31, 1986, is determined under section 168 pursuant to the Modified Accelerated

Cost Recovery System (MACRS), which was introduced into law by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 201(a), 100 Stat. 2085, 2121-2137. A depreciation deduction for tangible property is calculated by using the applicable depreciation method, recovery period, and convention. Sec. 168(a).

No deduction is allowed for personal, living, or family expenses. Sec. 262. In evaluating whether certain expenses are personal or business in nature, the courts have found that some expenses are so "inherently personal" that they are almost invariably held to come within the ambit of section 262. Fred W. Amend Co. v. Commissioner, 55 T.C. 320, 325-326 (1970), affd. 454 F.2d 399 (7th Cir. 1971). It is well settled that clothing that is suitable for general or personal wear does not qualify as a business expense under section 162. E.g., Green v. Commissioner, T.C. Memo. 1989-599. Such costs are not deductible even when it has been shown that the particular clothes would not have been purchased but for the employment. Stiner v. United States, 524 F.2d 640 (10th Cir. 1975); Donnelly v. Commissioner, 262 F.2d 411 (2d Cir. 1959), affg. 28 T.C. 1278 (1957).

With the exception of a $200 deduction for stage clothes, see infra pp. 12-13, petitioner is not entitled to deductions for any of his claimed expenses in excess of what respondent has allowed. For the automobile, office supplies, research, and travel expenses, petitioner did not submit documentary or

testimonial evidence to substantiate any amount in excess of what respondent conceded.  For the meals and entertainment expenses, petitioner's "substantiation" consists merely of receipts and a smattering of testimony regarding these meal items, which, at best, establish that money was spent.  Petitioner failed to reveal the business purpose of each meal and/or the business relationship of the person entertained, as is required by section 274(d).  In addition, some of the receipts do not reveal the time and place of the meetings, while others pertained to meetings that occurred during a taxable year not before the Court.

Several receipts reflect large expenditures for food and drink for many people.  Petitioner explained that Stewart had several rules (such as not being late for a bus) which, if violated, required the "guilty" person to pick up the restaurant tab for the entire band.  These may or may not be Stewart's rules, but we know of no authority to support a finding that such activities constitute ordinary and necessary expenditures.

Petitioner claimed deductions for depreciation expense in the amount of $1,673 and professional supplies in the amount of $17,329.  To support these deductions, petitioner submitted receipts and invoices totaling $17,132.  Respondent concedes that petitioner spent $17,132 on musical equipment and supplies during 1991, of which $825 is currently deductible and $16,307 is nondeductible, but depreciable.  Despite these concessions,

respondent has allowed petitioner a $3,382 professional supplies deduction and a $2,750 depreciation deduction (calculated by dividing the remaining cost basis of equipment, $13,750,[5] by a 5-year life of the asset). Petitioner has not presented proof or argument to support a deduction in excess of what respondent has allowed.

To support a stage clothes deduction,[6] petitioner submitted receipts totaling $695.11, representing purchases of various stage clothes items for which respondent has not allowed any amount. The receipts reflect the purchases of silk boxers, leather pants, men's underwear, hats, and a vest. Clearly the underwear does not qualify as a business expense. As to the remaining clothes items, we find that the majority of them are adaptable for general and personal wear and, therefore, are not a deductible employee business expense. Some of the more "flashy" and "loud" items, however, might not be acceptable ordinary wear. Although the receipts do not indicate which items fall into that category, we allow petitioner a $200 deduction for stage clothes. See Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930).

The claimed agent's commission expense is supported only by petitioner's testimony and relates to rent payments petitioner

---

[5] This number is the original cost basis, $17,132, less the amount respondent conceded as deductible in 1991, $3,382.

[6] Petitioner did not claim a separate deduction for stage clothes but most likely included it as part of another category.

made on his home on behalf of Currie, his "agent". This expense appears to be the kind of personal expenditure that is nondeductible under section 262.

Finally, as to the professional development and maintenance expenses, petitioner presented no documentation or testimony to support these deductions, and he seems to have abandoned his claim for these items. As to the claimed telephone expenses, the only evidence of telephone expenses presented were telephone charges appearing on the hotel bills incurred while petitioner was on tour with the band. There is no evidence that these calls were business related, and, hence, petitioner is not entitled to any deduction.

Accuracy-Related Penalty Under Section 6662

We finally consider whether petitioner is liable for the section 6662 accuracy-related penalty. Section 6662 imposes a penalty equal to 20 percent of the portion of the underpayment attributable to, inter alia, negligence or disregard of rules or regulations. "Negligence" includes failure to make a reasonable attempt to comply with the law, and the term "disregard" includes careless, reckless, or intentional disregard. Sec. 6662(c). Failure to maintain adequate records constitutes negligence. Crocker v. Commissioner, 92 T.C. 899, 917 (1989); Schroeder v. Commissioner, 40 T.C. 30, 34 (1963).

The Commissioner's determination imposing the section 6662(a) accuracy-related penalty is presumed correct, and the taxpayer bears the burden of proving that he is not liable for the penalty. Rule 142(a); Tweeddale v. Commissioner, 92 T.C. 501, 505 (1989). No penalty, however, shall be imposed under section 6662(a) with respect to any portion of an underpayment if it is shown that there was reasonable cause and the taxpayer acted in good faith with respect to that portion of the underpayment. Sec. 6664(c).

The disallowance of petitioner's Schedule A deductions stems from his negligent handling of his tax affairs and his disregard of rules or regulations. For most items, petitioner failed to maintain adequate records to sustain the deduction amounts in excess of what respondent allowed. Petitioner also disregarded the rules or regulations that require the capitalization of assets that have a useful life extending beyond the taxable year. While it is true that petitioner was on the road for much of 1991 and that his tax returns were prepared by tax professionals, he, nonetheless, bears the ultimate responsibility for the accuracy of his returns. Magill v. Commissioner, 70 T.C. 465, 479-480 (1978), affd. 651 F.2d 1233 (6th Cir. 1981). Petitioner was aware of every deduction claimed on his tax returns.

In light of the above, and the fact that petitioner did not present sufficient evidence to satisfy his burden, we find petitioner liable for the section 6662 accuracy-related penalty with respect to all items not conceded by respondent or allowed by this Court.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.