RITA ANN WAYNO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wayno v. Commissioner
Docket No. 12989-90
United States Tax Court
T.C. Memo 1992-53; 1992 Tax Ct. Memo LEXIS 58; 63 T.C.M. (CCH) 1935; T.C.M. (RIA) 92053; January 28, 1992, Filed *58 Decision will be entered under Rule 155. Rita Ann Wayno, pro se. Alice M. Harbutte, for respondent. PATE, Special Trial Judge. PATE
MEMORANDUM FINDINGS OF FACT AND OPINION This case was assigned pursuant to the provisions of section 7443A(b) and Rules 180, 181, and 182. [1]
Respondent determined a deficiency in petitioner's 1986 Federal income taxes of $ 6,515, and additions to tax for negligence under section 6653(a)(1)(A) of $ 326,and under section 6653(a)(1)(B) in an amount equal to 50 percent of the interest due on $ 4,915. FINDINGS OF FACT On April 15, 1987, Jerome W. Wayno (hereinafter Mr. Wayno) and Rita Ann Wayno (hereinafter petitioner) filed their 1986 joint Federal income tax return. They attached thereto a Schedule C on which they reported no gross income, but on which they deducted expenses totaling $ 21,530. *59 Mr. Wayno died on December 17, 1987, after the 1986 return was filed. On March 19, 1990, petitioner mailed a Form 1040X for 1986 (hereinafter second return) to the Internal Revenue Service Center on which (among other things) she reduced the Schedule C deductions to $ 3,566. However, on the second return petitioner deducted some expenses on Schedule A which previously had been deducted on Schedule C. In addition, petitioner claimed "casualty" losses totaling $ 1,917,766 on the second return. That total was comprised of the following losses: Theft of equipment
$ 2,500  Vandalism of equipment
6,600
Embezzlement of funds
59,709
Sale of equipment
95,308
Losses for Outdoor Bowl
10,000
Sale of real property
206,000
Foreclosure costs
7,000
Wages
480,000
Deferred Compensation
320,000
Worthlessness of
Florida I.Q. stockholdings   240,000
Loans to Florida I.Q.
490,649
Total
[1] $ 1,917,766
Respondent issued *60 a notice of deficiency to petitioner on March 29, 1990. The notice of deficiency did not take into account any of the changes included on the second return. In filing her petition, however, petitioner referred to the second return and, in his answer, respondent disputed those allegations on the grounds that some of the losses were not actually sustained and that none of the losses were sustained in 1986. Because the petition specifically referred to the losses claimed on the second return, and because the issues raised thereby were tried without objection from respondent, we consider them herein. See Rule 41(b). Accordingly, after concessions by both parties, the issues for our decision are: (1) Whether petitioner may deduct losses of $ 1,917,766, (2) whether petitioner may deduct expenditures she made to maintain certain litigation, (3) whether petitioner is entitled to an investment tax credit, and (4) whether petitioner is liable for additions to tax for negligence. Some of the facts have been stipulated and are so found. The Stipulation of Facts, Supplemental Stipulation of Facts, and attached exhibits are incorporated herein by this reference. Petitioner resided in Bonsall, *61 California, at the time she filed her petition. Between 1968 and 1975, petitioner and her husband owned and operated Florida I.Q. Computer Corp. (hereinafter Florida I.Q.). Florida I.Q. was a Florida corporation in the business of installing, maintaining, and operating music and amusement machines. In 1974 it contracted with the Army and Air Force Exchange Service (hereinafter AAFES) to place and maintain its machines at MacDill Air Force Base, Tampa, Florida; Moody Air Force Base, Valdosta, Georgia; and Fort Jackson, Columbia, South Carolina. In 1975, AAFES terminated the Fort Jackson contract on the grounds that Florida I.Q. was delinquent in its payment of fees and charges for which the corporation was contractually responsible. Thereafter, petitioner and her husband entered into a multitude of appeals and law suits stretching over a period of more than 10 years, only some of which are briefly described below. Florida I.Q. appealed to the Armed Service Board of Contract Appeals (hereinafter ASBCA) alleging that the Fort Jackson contract had been wrongfully terminated. In March 1977, ASBCA found that the termination was proper and denied recovery. On October 2, 1978, Florida *62 I.Q. appealed ASBCA's decision in the United States Court of Claims. The Court of Claims upheld ASBCA's decision, finding that the termination was proper, supported by substantial evidence and correct as a matter of law. See Florida I.Q. Computer Corp. v. United States, 228 Ct. Cl. 748 (1981). In 1981, Florida I.Q. was involuntarily dissolved for failure to pay its filing fees to the State of Florida. The delinquent filing fees were subsequently paid and FloridaI.Q.'s corporate charter was reinstated. However, Florida I.Q. was involuntarily dissolved for the second time in 1984, again because its filing fees had not been paid. In 1982, petitioner and her husband filed a complaint for damages with the United States District Court for the Central District of California, alleging conspiracy to injure and destroy business, antitrust, restraint of competition, breach of contract, negligence, misrepresentation, conversion, and defamation of character. On March 22, 1983, the District Court dismissed the case because petitioner and her husband lacked standing to bring such action. In 1983, petitioner and her husband appealed the District Court's dismissal to the *63 United States Court of Appeals for the Ninth Circuit, which, inter alia, remanded the case to permit petitioner and her husband to amend their complaint. Subsequently, on November 8, 1984, the District Court again dismissed the case, this time for the failure of Florida I.Q. to comply with the court's rules. In 1984, petitioner, her husband, and Florida I.Q. filed an amended complaint for breach of contract with the United States Claims Court. This case was dismissed on May 10, 1985, for failure to comply with the court's rule 8(a). Petitioner and her husband subsequently filed an appeal with the United States Court of Appeals for the Federal Circuit, which affirmed on November 13, 1985. See Wayno v. United States, 785 F.2d 323 (Fed. Cir. 1985). During 1985 and 1986, petitioner prepared a petition for a writ of certiorari to the United States Supreme Court. She first attempted to file her petition on October 14, 1986. Afterward, she revised the petition as required by the Supreme Court to conform to its rules. That revised petition was filed on December 5, 1988. The Supreme Court denied certiorari in 1989. See Wayno v. United States, 489 U.S. 1086 (1989). *64 Prior to 1986, petitioner also filed a lawsuit in the United States District Court for the Middle District of Florida against Bob Steele Chevrolet, Inc. (Steele Chevrolet). The suit sought damages resulting from an accident involving petitioner's automobile (driven by her son) and another automobile initially owned by Steele Chevrolet. In July 1986, the case went to trial. After a decision was entered against petitioner, she appealed it to the United States Court of Appeals for the Eleventh Circuit. On May 22, 1987, the Eleventh Circuit affirmed. See Wayno v. Bob Steele Chevrolet, Inc., 819 F.2d 1148 (11th Cir. 1987). Petitioner subsequently petitioned the Supreme Court for certiorari, but it was denied on October 13, 1987. See Wayno v. Bob Steele Chevrolet, Inc., 484 U.S. 899 (1987). During 1986, petitioner incurred various expenses in maintaining the aforementioned law suits. The parties have stipulated that, in 1986, petitioner expended $ 1,824 with respect to her claim against AAFES, and $ 3,407 with respect to her claim against Steele Chevrolet. OPINION [2]
*65 I. LOSSES
A. In General
The first issue which we must address is whether petitioner may deduct various losses (which she denominated "casualty losses") totalling $ 1,917,766. In general, section 165(a) allows a deduction for losses "sustained during the taxable year and not compensated for by insurance or otherwise." An individual may only deduct losses that are (1) incurred in a trade or business, (2) incurred in any transaction entered into for profit, (3) of property lost because of fire, storm, shipwreck, or other casualty, or (4) from theft. Sec. 165(c). To be deductible, a loss must be evidenced by a closed and completed transaction, fixed by an identifiable event, and sustained in the year claimed. Sec. 1.165-1(b), Income Tax Regs. Because deductions are a matter of legislative grace the taxpayer must prove she is entitled to the loss claimed. Rule 142(a); Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). A loss must be "actually sustained" to be deductible. Sec. 1.165-1(a), Income Tax Regs. Further, only a bona fide loss is deductible, and the principle of *66 substance over form governs in determining whether a loss is bona fide. Sec. 1.165-1(b), Income Tax Regs.
Further, a loss may only be deducted by the taxpayer who sustained it. Where there is a question as to whether a loss is properly deductible by a corporation or its shareholders, the corporation is treated as being separate and distinct from its shareholders. Moline Properties, Inc. v. Commissioner, 319 U.S. 436 (1943). Therefore, a loss incurred by a corporation in connection with its trade or business is deductible by the corporation not its shareholders. Evans v. Commissioner, 557 F.2d 1095, 1099-1100 (5th Cir. 1977), affg. in part and revg. in part T.C. Memo. 1974-267; see also Margolis v. United States, 570 F. Supp. 170 (N.D. Cal. 1983), affd. without published opinion 735 F.2d 1370 (9th Cir. 1984). Moreover, a loss is allowed as a deduction only for the taxable year in which the loss is sustained. Sec. 1.165-1(d)(1), Income Tax Regs. If the loss is not covered by a claim for reimbursement, it is deductible for the taxable year in which it occurs. Sec. 1.165-1(d)(2)(ii), *67 Income Tax Regs. If, however, there exists a claim for reimbursement for which there is a reasonable prospect of recovery, no portion of the loss is deductible until it can be ascertained with reasonable certainty whether or not such reimbursement will be received. Sec. 1.165-1(d)(2)(ii), Income Tax Regs.
B. Theft, Vandalism, and Embezzlement
Certain machines owned by Florida I.Q. were vandalized during 1975 resulting in damage of $ 6,600. Also, during that year, $ 2,500 in cash was stolen from the machines. In addition, from October 1974 through July 1975, $ 59,709 was embezzled from machines owned by Florida I.Q. located at Fort Jackson. Although petitioner admits that these losses occurred in 1975, she contends that she is entitled to deduct them on her 1986 return because it was in 1986 that her petition for certiorari was denied by the Supreme Court, thereby precluding all possibility of recovery. Respondent maintains that petitioner is not entitled to deduct these losses because they were suffered by Florida I.Q. He also maintains that such losses are not deductible in 1986 because they were sustained in 1975. Losses from theft are deductible to the extent they *68 are not compensated for by insurance or otherwise. Sec. 1.165-8, Income Tax Regs. For purposes of section 165, a theft is the appropriation of a taxpayer's property including, but not limited to, larceny, embezzlement, or robbery. Edwards v. Bromberg, 232 F.2d 107 (5th Cir. 1956). Sec. 1.165-8(d), Income Tax Regs.
A theft loss generally is deductible in the year of discovery. Sec. 165(e); Gerstell v. Commissioner, 46 T.C. 161, 175 (1966), sec. 1.165-8(a)(2), Income Tax Regs. Nevertheless, a deduction will not be allowed if there exists in the year of discovery a claim for reimbursement and a reasonable prospect of recovery. Halliburton Co. v. Commissioner, 93 T.C. 758, 775 (1989), affd. 946 F.2d 395 (5th Cir. 1991); Gale v. Commissioner, 41 T.C. 269 (1963). In such a case, the loss is not deductible to the extent of the claim until it is reasonably certain whether reimbursement will actually be received. Sec. 1.165-1(d)(3), Income Tax Regs.
The losses from theft, vandalism, and embezzlement claimed by petitioner were losses suffered by Florida I.Q. These losses are properly *69 deductible only by the corporation which suffered them. Moreover, the events giving rise to the destruction of the equipment and the theft losses all occurred prior to 1986. Thus, the losses are not deductible in 1986, the year petitioner claimed them. Petitioner's argument that the losses should be deductible in 1986 because that was the year in which her petition for certiorari was denied is without merit. First, it appears certiorari was denied in 1989, not 1986. Further, in that suit, petitioner sought damages for the wrongful termination of the AAFES contract, not for reimbursement of losses attributable to acts of vandalism and theft taking place prior to the termination of the contract. For the reasons stated above, we hold that petitioner is not entitled to deduct these losses. Weigman v. Commissioner, 47 T.C. 596 (1967), affd. per curiam 400 F.2d 584 (9th Cir. 1968). C. Sale of Equipment
When Florida I.Q. liquidated its operations in 1975, it sold all of its equipment, thereby realizing a loss of $ 93,308. Petitioner claims that she is entitled to deduct the loss in 1986. Here, again, the equipment was owned by, and therefore *70 the loss was suffered by, Florida I.Q., not by petitioner. Further, the sale of the equipment occurred prior to 1986. Accordingly, we hold that petitioner is not entitled to deduct the loss realized upon the sale of Florida I.Q.'s equipment. D. Losses for Outdoor Bowl
Florida I.Q. invested funds in a partnership named Outdoor Bowl. At trial, petitioner conceded that she was not entitled to deduct the loss because corporate funds, not personal funds, were used to make the investment. E. Real Property and Foreclosure Costs
Prior to 1977, petitioner and her husband owned various parcels of real property. They were unable to make the mortgage payments and, in 1977, under threat of foreclosure, were forced to sell seven of them. As a result of such sales, petitioner and her husband realized a loss of $ 206,000, plus foreclosure costs of $ 7,000. Petitioner maintains that her mortgage payments became delinquent because Florida IQ lost the AAFES contract. She reasons, therefore, that she is entitled to deduct these losses in 1986 because that was the year in which her AAFES contract claim became worthless. Respondent argues that these losses are not deductible in 1986 *71 because they were not sustained in that year. Section 165(a) requires that a loss be deducted in the year in which it is fixed by a closed and completed transaction. Sec. 1.165-1(b), (d)(1), Income Tax Regs. These seven parcels of real property were sold by petitioner in 1977. Therefore, she sustained these losses in 1977, not 1986. We so hold. F. Wages and Deferred Compensation
Petitioner also deducted the loss of $ 480,000 in wages, and $ 320,000 in deferred compensation. She maintains that, due to the wrongful termination of FloridaI.Q.'s contract by AAFES, she and her husband did not receive the wages and pensions they would have been paid had the contract not been terminated. She concludes, therefore, that she is entitled to deduct as a loss the amount of her and her husband's unpaid wages and pension. Alternatively, petitioner maintains that the unpaid wages and pension became a worthless debt in 1986 when the Supreme Court denied certiorari. Respondent argues that the loss of anticipated income is not a deductible loss. In general, the failure to realize anticipated income does not give rise to a deductible loss. E.g., Escofil v. Commissioner, 464 F.2d 358 (3d Cir. 1972), *72 affg. T.C. Memo. 1971-131; Hendricks v. Commissioner, 406 F.2d 269, 272 (5th Cir. 1969), affg. T.C. Memo. 1967-140; J. G. Boswell Co. v. Commissioner, 34 T.C. 539 (1960), affd. 302 F.2d 682 (9th Cir. 1962). This principle is based on the fact that the amount of a loss which may be deducted may not exceed the adjusted basis for determining loss from the sale or other disposition of the property involved. Sec. 165(b); sec. 1.165-1(c), Income Tax Regs. Because the amount of deductible losses is limited to the taxpayer's basis in the lost property, and because taxpayers have no tax basis in anticipated but unearned wages, it follows that no loss is deductible. See Thompson v. Commissioner, 66 T.C. 1024, 1056 (1976), affd. 631 F.2d 642 (9th Cir. 1980). Accordingly, we hold that petitioner has no deductible loss because she had no tax basis in the wages and pension Florida I.Q. would have paid her had it remained in business. Alternatively, petitioner claims that these amounts are deductible as an uncollectible debt owed to her by Florida I.Q. Section 166 provides *73 for a deduction for bad debts that become worthless within the taxable year. A deductible bad debt must arise from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money. Sec. 1.166-1(c), Income Tax Regs.
Worthless debts arising from unpaid wages and salaries are permitted as a bad debt deduction under section 166 only if the income such items represent has been reported as income on an income tax return, either for the year for which the deduction is claimed or for a prior taxable year. Sec. 1.166-1(e), Income Tax Regs. Petitioner and her husband did not report this deferred compensation on any Federal income tax return. Accordingly, she is not entitled to any bad debt deduction. G. Worthless Stock Loss
Petitioner and her husband each owned 50 percent of the capital stock of Florida I.Q. She contends that she is entitled to a deduction for the loss of Florida I.Q. in an amount equal to the market value at which the business could have been sold based on the prevailing prices of similar businesses during 1974. Respondent argues that petitioner is not entitled to the deduction in 1986. Section 165(g)(1) *74 provides that if stock becomes worthless during the taxable year, the resulting loss will be treated as a loss from the sale or exchange of a capital asset on the last day of the taxable year. The amount of the loss is the taxpayer's basis in the stock. See secs. 165(b), 1001 et seq.; sec. 1.165-1(c), Income Tax Regs. Such loss is deductible only in the year in which the stock becomes wholly worthless. Scifo v. Commissioner, 68 T.C. 714, 725-726 (1977); Aagaard v. Commissioner, 56 T.C. 191, 209 (1971), and cases cited therein; secs. 1.165-4(a), 1.165-5(c), Income Tax Regs. The question of when stock becomes worthless is a factual determination. Petitioner has the burden of proving not only whether the stock became worthless, but also that it had value at the beginning of the taxable year, and became worthless in the year in issue. Rule 142(a); Boehm v. Commissioner, 326 U.S. 287, 294 (1945); Scifo v. Commissioner, supra at 725. To determine the year of loss, certain events, such as the cessation of business, sale of substantially all of the assets, and surrender or revocation of the corporate *75 charter, are commonly cited to show the year of worthlessness. See singer v. Commissioner, T.C. Memo. 1975-63. However, even the cessation of operations and sale of all assets might not be a "closed transaction" if there is a possibility of recovering something by litigation. See Ramsay Scarlett & Co. v. Commissioner, 521 F.2d 786 (4th Cir. 1975), affg. 61 T.C. 795 (1974). Generally, the pursuit of litigation is an indication that there was a reasonable prospect of recovery. E.g., Dawn v. Commissioner, 675 F.2d 1077 (9th Cir. 1982), affg. T.C. Memo. 1979-479; Halliburton Co. v. Commissioner, 93 T.C. at 775. But none of these cases lay down any hard and fast rule, and it is recognized that the subsequent pursuit of litigation is not determinative. See, e.g., Boehm v Commissioner, supra at 292-293; Parmelee Transportation Co. v United States, 173 Ct. Cl. 139, 351 F.2d 619, 629 (1965). There is no question that petitioner's stock in Florida I.Q. became worthless. Therefore, we need only decide whether petitioner's *76 stock became worthless in 1986 and, if so, the amount petitioner is entitled to deduct as a result of such worthlessness. Respondent argues that petitioner did not show that her stock became worthless in 1986. We agree. The contract between Florida I.Q. and AAFES was terminated in 1975, Florida I.Q. sold its equipment and terminated its operations in 1975, ASBCA found AAFES termination proper in 1977, and the Court of Claims upheld that determination in 1981. Moreover, Florida I.Q. was formally dissolved for the second and final time in 1984. Although litigation was pursued thereafter, we conclude that at the beginning of 1986 there was no reasonable chance of recovery. Accordingly, we hold that petitioner's stock became worthless prior to the beginning of 1986. Moreover, even if we assume that petitioner's stock became worthless in 1986, she deducted a loss equal to the value which she believes her stock would have been worth in 1986 had AAFES not terminated FloridaI.Q.'s contract. Petitioner may not do this. The law limits the amount of the loss to her tax basis in the stock and petitioner did not submit evidence sufficient to prove such basis. Therefore, she is not entitled *77 to a worthless stock loss for 1986. H. Loans to FloridaI.Q.
On December 15, 1967, Florida I.Q. owed petitioner and her husband $ 38,000. Although that loan was later paid, petitioner and her husband advanced additional amounts to Florida I.Q. between 1968 and 1977. Petitioner contends that in 1977 Florida I.Q. owed them $ 93,679, and that she is entitled to deduct that amount as a bad debt loss in 1986. Respondent contends that these purported loans did not result in a bona fide debt. Alternatively, he argues that, even if we find that a bona fide debt existed between petitioner and Florida I.Q., that debt did not become worthless in 1986 and, therefore, the loss therefrom was not deductible in that year. As previously stated, in order to deduct a bad debt under section 166, a taxpayer must prove, among other things, that a bona fide debtor-creditor relationship existed and that the debtor was obligated to pay the creditor a fixed or determinable sum of money. Sec. 1.166-1(c), Income Tax Regs. An advance that is a contribution to capital does not qualify as debt for purposes of section 166. Calumet Industries, Inc. and Subsidiaries v. Commissioner, 95 T.C. 257, 284 (1990); *78 Kean v. Commissioner, 91 T.C. 575, 594 (1988); sec. 1.166-1(c), Income Tax Regs. In determining whether advances made by a taxpayer to his closely held or controlled corporation constitute a debt, we apply an objective test of economic reality. This test analyzes whether an independent and prudent lender would have made similar loans to the corporation. See Wildes v. Commissioner, T.C. Memo. 1980-298. Petitioner did not present any evidence to substantiate the $ 93,679 loss she claims, nor did she show the circumstances under which the money was advanced. Moreover, even if we assume that a bona fide indebtedness did exist between petitioner and Florida I.Q., we find that it became worthless prior to 1986. Accordingly, we hold that petitioner is not entitled to a bad debt loss deduction in 1986. II. LITIGATION EXPENSES
On the joint income tax return petitioner filed with her husband for 1986, she deducted $ 21,530 on Schedule C for amounts she claims she expended to prepare a petition for certiorari to the Supreme Court in the AAFES case and to maintain her law suit against Steele Chevrolet. The parties have stipulated that, during *79 1986, petitioner paid $ 1,824 in expenses directly related to the preparation of the AAFES case, and $ 3,407 toward preparation of the Steele Chevrolet case. However, petitioner maintains that she may also deduct the remainder of the expenses she claimed on Schedule C (including a portion of her rent and utilities) as trade or business expenses. [3] Respondent maintains that petitioner is not entitled to deduct any of these expenses because they were not incurred in carrying on any trade or business. The deductibility of legal expenses is determined by looking at the "origin and character of the claim with respect to which an expense was incurred." United States v. Gilmore, 372 U.S. 39, 49 (1963). *80 It follows, therefore, that when a lawsuit is directly connected with, or, proximately results from, a business, the legal expenses incurred in maintaining such lawsuit are considered deductible business expenses. Kornhauser v. United States, 276 U.S. 145, 153 (1928); Dancer v. Commissioner, 73 T.C. 1103 (1980). Section 162(a) allows a deduction for ordinary and necessary expenses paid or incurred in "carrying on any trade or business." The Supreme Court has found that "to be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and * * * the taxpayer's primary purpose for engaging in the activity must be for income or profit". Commissioner v. Groetzinger, 480 U.S. 32, 35 (1987). Therefore, a taxpayer's activities fall within the scope of section 162 only where a profit motive exists. Portland Golf Club v. Commissioner, 497 U.S.    , 110 S. Ct. 2780 (1990); Commissioner v. Groetzinger, supra.
Similarly, section 212(1) permits a deduction for ordinary and necessary expenses paid or incurred "for the production or collection *81 of income." This section allows a taxpayer to deduct expenses incurred with respect to profit-seeking activities which do not rise to the level of a trade or business. United States v. Gilmore, 372 U.S. 39, 44-45 (1963); Bingham's Trust v. Commissioner, 325 U.S. 365, 374 (1945); Rafter v. Commissioner, 60 T.C. 1, 8 (1973), affd. 489 F.2d 752 (2d Cir. 1974). However, crucial to both sections is the presence of a profit objective. Moreover, both sections must be applied in light of section 262, which disallows deductions for expenses that are personal in nature. United States v. Gilmore, supra at 45-46; Fred W. Amend Co. v Commissioner, 454 F.2d 399, 402-403 (7th Cir. 1971), affg. 55 T.C. 320 (1970). Petitioner's claim against Steele Chevrolet arose from damages to her automobile which (while being driven by her son) collided with another automobile previously owned by Steele Chevrolet. Therefore, in order to decide whether petitioner may deduct the cost of this litigation, we must determine whether the accident occurred while the automobile was *82 being used for business or profit-seeking purposes. Dancer v. Commissioner, supra.
At trial, petitioner did not reveal the reason her automobile was being used at the time the accident occurred. Accordingly, we hold that she did not carry her burden of proving that the damage to her automobile was related to any business or profit-seeking activity, and, therefore, is not entitled to deduct the attendant litigating costs under either section 162 or 212. [4]
In the case against AAFES, the claim arose from the termination by AAFES of its business contracts with Florida I.Q. Thus, the claim originated in connection with the profit-seeking activities of Florida I.Q., not petitioner. Nevertheless, petitioner and her husband owned all of the common stock of Florida I.Q. and, when Florida I.Q. was liquidated, they apparently *83 received all of its assets, including whatever claim Florida I.Q. may have had against AAFES. Therefore, at first blush, it appears that the claim did originate in connection with profit-seeking activities and, therefore, the attendant litigating costs may be deductible. However, we have already found that Florida I.Q. ceased operations, sold its assets, liquidated, and dissolved, prior to 1986. In addition, by the beginning of 1986, all the complaints Florida I.Q. filed with both administrative agencies and all of the courts empowered to rule on the question had been unsuccessful (except for the Supreme Court, which did not deny certiorari until 1989). Under these circumstances, we have concluded that there was no reasonable prospect of recovery of the AAFES claim on January 1, 1986. Rather, because petitioner started litigating the AAFES claim in 1975 and has continued such litigation for more than 11 years (despite the fact that she had been unsuccessful in all forums), we conclude that, by the beginning of 1986, she was engaged in a personal vendetta against AAFES. She strongly felt that she had been wronged by AAFES and was determined to litigate the issue for as long and *84 as hard as she could, irrespective of her probability of success. Such vendettas are personal in nature, and the litigation expenses incurred in connection therewith are not deductible under either section 162 or 212. See, e.g., Dyer v. Commissioner, 352 F.2d 948, 952 (8th Cir. 1965), affg. T.C. Memo. 1964-200; Rafter v. Commissioner, 60 T.C. 1, 11 (1973), affd. without opinion 489 F.2d 752 (2d Cir. 1974). Consequently, we hold that petitioner may not deduct the expenses she incurred in preparing her petition for certiorari in her suit against AAFES. III. INVESTMENT TAX CREDIT
In 1983, petitioner and her husband purchased a 1982 Oldsmobile for $ 12,483. On their 1983 Federal income tax return, they claimed that they used the Oldsmobile in their business and, accordingly, deducted depreciation and claimed an investment tax credit (hereinafter ITC) thereon. During 1984 or 1985, the Oldsmobile was used only for personal purposes, but during 1986, Mr. Wayno used the Oldsmobile on his job with Northrop Corporation. On their 1986 Federal income tax return, petitioner and her husband took credit for the *85 unused portion of the ITC claimed in 1983. Respondent disallowed the credit arguing that, even if any ITC was allowable to petitioner and her husband in 1983, it should have been recaptured in 1984, and that, when the vehicle was converted back to business use in 1986, no ITC was available. In general, taxpayers are allowed a credit against their tax for tangible personal property placed in service in their trade or business during the year, provided that the property is depreciable and has a useful life of 3 years or more. Secs. 38, 46(a)(2), 48(a)(1). However, section 47(a) requires recapture of all of the ITC claimed, if such property is disposed of, or ceases to be used in a trade or business, within 1 full year after such property is placed in service. Sec. 47(a)(1); Hamby v. Commissioner, T.C. Memo. 1988-555; sec. 1.47-1(a), Income Tax Regs.
Petitioner contends that the Oldsmobile was used in her trade or business in 1983, and that she is entitled to an ITC carryforward from 1983 to 1986. However, petitioner admits that the vehicle was not used for business in either 1984 or 1985. Therefore, any allowable credit for 1983 had to be recaptured by petitioner *86 in 1984. Bacot v. Commissioner, T.C. Memo. 1989-77; Masat v. Commissioner, T.C. Memo. 1984-313, affd. in part and revd. in part 784 F.2d 573 (5th Cir. 1986). Moreover, by the time Mr. Wayno reconverted the Oldsmobile to business use in 1986, the investment credit was no longer available. Sec. 49(a)(1). Accordingly, we hold that petitioner is not entitled to an ITC in 1986. IV. NEGLIGENCE
Respondent determined that petitioner is liable for additions to tax for negligence under section 6653(a)(1)(A) and (B). Section 6653(a)(1)(A) provides that, if any portion of an underpayment of tax is due to negligence or intentional disregard of rules or regulations, an amount equal to 5 percent of the underpayment is added to the tax. Section 6653(a)(1)(B) provides for an addition to tax equal to 50 percent of the interest on the portion of the underpayment attributable to negligence. Negligence has been defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982); *87 Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964); Neely v. Commissioner, 85 T.C. 934, 947 (1985). Because an addition to tax under section 6653(a) is presumptively correct, petitioner bears the burden of establishing that respondent's determination was erroneous. Betson v. Commissioner, 802 F.2d 365, 372 (9th Cir. 1986), affg. in part and revg. in part T.C. Memo. 1984-264; Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972); Enoch v. Commissioner, 57 T.C. 781, 802-803 (1972). Petitioner has failed to provide us with any facts surrounding the preparation of her 1986 income tax return. Because she bears the burden of proof as to this issue, and has failed to supply us with the needed information, we hold that she is subject to the additions to tax under section 6653(a). To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. At trial, petitioner incorrectly stated that the "casualty" losses totaled $ 1,913,296.↩
2. For the sake of convenience and clarity, we have made additional findings of fact with respect to each issue and they are incorporated in the opinion.↩
3. The parties also have stipulated that, if this Court finds that petitioner is not entitled to deduct these expenses because she was not carrying on a trade or business, she is entitled to deduct (on Schedule A) a mutual fund fee of $ 50, interest on a car loan of $ 1,206, and dues and publication fees of $ 196.↩
4. Moreover, petitioner may not claim these expenses as a part of the casualty loss attributable to the accident. Tarsey v. Commissioner, 56 T.C. 553↩ (1971).