T.C. Memo. 2019-36

UNITED STATES TAX COURT

AMES D. RAY, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14052-16.                    Filed April 15, 2019.

<u>J. Winston Krause</u>, for petitioner.

<u>Donald D. Priver</u> and <u>Brock E. Whalen</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NEGA, <u>Judge</u>:  Respondent determined a deficiency in petitioner's Federal

income tax and an accuracy-related penalty under section 6662(a)[1] for tax year

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code (Code) in effect for the year at issue, and Rule references are to the
Tax Court Rules of Practice and Procedure.  All monetary amounts are rounded to
(continued...)

[*2] 2014 (year at issue) of $53,988 and $9,883, respectively.  The issues for decision are whether petitioner is:  (1) entitled to a deduction for legal expenses of $267,224 and (2) liable for an accuracy-related penalty under section 6662(a).

FINDINGS OF FACT

Some of the facts are stipulated and are so found.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.  Petitioner resided in Texas when the petition was filed.

I.      Petitioner's Background

At a time not established by the record petitioner began attending Michigan State University (Michigan State) to pursue an advanced degree in physics. During that time petitioner met and started dating Christina I. Ray (Ms. Ray), who was also pursuing an advanced degree in physics at Michigan State.  In 1972 petitioner married Ms. Ray.  At a time not established by the record petitioner and Ms. Ray opened joint credit card and bank accounts.

In 1976 petitioner and Ms. Ray moved to New York to begin their respective careers.  They rented a residence on East 87th Street, New York, NY

_____

[1](...continued)
the nearest dollar.

[*3] (87th Street residence). Only Ms. Ray's name was on the lease for the 87th Street residence.

In 1977 petitioner and Ms. Ray divorced. Despite their divorce they continued to live together at the 87th Street residence, continued to share bank accounts, and did not divide their assets. After their divorce they kept track of their joint expenses by way of a ledger system (ledger system).

In 1981 petitioner and Ms. Ray jointly purchased property in Sagaponack, New York (Sagaponack property). Petitioner and Ms. Ray purchased that property with the intent to build a vacation home on it. In 1984 petitioner sold his interest in the Sagaponack property to Ms. Ray. Petitioner lent Ms. Ray the money so that she could purchase his interest in the Sagaponack property (Sagaponack property loan), and petitioner and Ms. Ray memorialized the Sagaponack property loan in their ledger system.

In 1987 the 87th Street residence became a co-op. At a time not established by the record Ms. Ray lent to petitioner money so that he could purchase shares of the co-op. At a time not established by the record petitioner repaid Ms. Ray that loan in the amount of $54,905. Thereafter, petitioner and Ms. Ray purchased shares in that co-op; however, the shares were issued only in Ms. Ray's name. Despite that, petitioner and Ms. Ray memorialized their joint ownership of the

**[*4]** 87th Street residence. In 1991 petitioner sold his interest in the 87th Street residence to Ms. Ray. Petitioner and Ms. Ray memorialized Ms. Ray's debt to petitioner with respect to the 87th Street residence in their ledger system.

At a time not established by the record petitioner and Ms. Ray stopped maintaining their joint bank accounts and using their ledger system and instead memorialized their debts to one another through signed letters.

On November 25, 1991, Ms. Ray executed a note to petitioner in the amount of $432,428. Of that amount, approximately $350,000 was allocated to Ms. Ray's purchase of petitioner's interest in the Sagaponack property, with the remainder allocated to Ms. Ray's purchase of petitioner's interest in the 87th Street residence.

On November 25, 1991, Ms. Ray also executed a separate agreement with petitioner in which she stated that she would be solely liable for, and agreed to pay the outstanding balances due on, petitioner's Discover Card, 1st Nationwide account, Marine Midland account, Monogram Bank account, Bank of New York account, and American Express TRS & Optima accounts as those balances were the result of her spending.

In 1992 petitioner moved out of the 87th Street residence and moved to Florida.

**[*5]** On April 13, 1993, Ms. Ray executed a confession of judgment to petitioner in the Supreme Court of New York, County of New York (confession of judgment). That confession stated in pertinent part:

> [D]efendant [Ms. Ray] hereby confesses judgment herein and authorizes entry thereof against defendant in the sum of $532,288.10. * * * This confession of judgment is for a debt justly due to the plaintiff [petitioner] arising from the following facts: Default on a promissory note dated November 25, 1991 in the principal amount of $432,427.67. I failed to pay the amount due notwithstanding due demand therefor. Of the total amount confessed to herein, $99,860.43 represents my share of credit card debt which plaintiff paid or will pay on my behalf, as well as legal and associated expenses incurred in connection with the enforcement of the note, and interest through March 22, 1993.

II.     Ms. Ray's Proposal and Trading Activities

In 1993 Ms. Ray approached petitioner with a plan for the two of them to make money. Ms. Ray proposed using petitioner's capital to trade commodities futures and options using market theories and trading methods she had developed and wished to develop further.[2]

---

[2]Ms. Ray held herself out as an expert in options trading and risk management. In fact from 1977 through 1993 Ms. Ray worked as an officer for eight different employers that were involved in the securities industry in New York. Further, in 1992, Ms. Ray published a book on the topic, titled "The Bond Market: Trading and Risk Management".

**[*6]** After a series of proposals and counterproposals, petitioner agreed to participate and settled the terms of the arrangement with Ms. Ray. On May 24, 1993, petitioner and Ms. Ray formalized the terms of their arrangement with respect to Ms. Ray's proposal in a written document (commodities account agreement). That agreement allowed Ms. Ray the sole discretion to trade on petitioner's commodities account with his capital (petitioner's account). In return the agreement provided that petitioner had the right to publicize or advertise the results of Ms. Ray's trading. Notwithstanding the value of that advertising right and his desire to help Ms. Ray develop her theories and methods, petitioner was primarily motivated to enter the commodities account agreement because he believed it would yield significant profits and returns on his investment.

On June 14, 1993, petitioner proposed an amendment to the commodities account agreement that stated in pertinent part:

> I agree to have you continue your trading for my account under the following condition: You'll pay to me the amount of money that my account falls below $350M [i.e., $350,000]. Otherwise, trade my account to liquidate positions when my account's value falls below $350M [i.e., $350,000].

On September 4, 1993, Ms. Ray agreed to that amendment. In the months between the amendment proposal and agreement Ms. Ray stopped trading on

[*7] petitioner's account because the cash in the account was insufficient to allow any further trades.

Ms. Ray did not manage anyone else's funds when she was managing petitioner's account. At no time did petitioner ever trade on his own account.

On September 5, 1993, petitioner and Ms. Ray entered into an agreement wherein Ms. Ray agreed to provide to petitioner notarized financial statements that would detail her assets and liabilities as if she were applying for a bank loan, including a statement of her net worth as of September 15 and March 15 of every year until she paid in full the debts detailed in the confession of judgment. Ms. Ray was to provide petitioner those statements on or before October 15 and April 15 of each respective year and would incur a $50-per-day penalty for failing to timely submit those financial statements.

On August 10, 1994, Ms. Ray sent two signed letters to petitioner. The first stated that, as of August 15, 1994, Ms. Ray owed petitioner $590,223, comprising amounts related to her confession of judgment, failure to timely submit financials, unpaid credit card debts, and associated interest (collectively, Ms. Ray's damages). The second letter stated that as of August 15, 1994, Ms. Ray would owe petitioner $384,388, consisting of $348,715 for funds management losses and $35,673 of interest (Ms. Ray's funds management losses). In both letters Ms. Ray

**[\*8]** also stated that she would pay those respective amounts to petitioner before June 1, 1999, plus additional interest.

III.    Petitioner's Lawsuits Against Ms. Ray and/or her Attorneys

    A.    Ray v. Ray Index No. 604381/98

On September 9, 1998, petitioner filed a lawsuit against Ms. Ray in the Supreme Court of the State of New York, New York County (Supreme Court of New York), Ray v. Ray, Index No. 604381/98 (Ray I).  In his complaint petitioner alleged, for our purposes, two causes of action arising from Ms. Ray's failure to pay petitioner any part of (1) Ms. Ray's damages (i.e., those resulting from the confession of judgment, late financials, and credit card debt) or (2) Ms. Ray's funds management losses.  On January 11, 2008, the Supreme Court of New York dismissed petitioner's complaint in Ray I.  On April 7, 2009, the Supreme Court of New York, Appellate Division, overturned that dismissal.  As of the time of trial in this case, Ray I is still a pending case.  During the year at issue petitioner spent $77,724 on legal fees with respect to that case.

    B.    Ray v. Ray Index No. 652314/2010

On October 20, 2010, petitioner filed a lawsuit against Ms. Ray in the Supreme Court of New York, Ray v. Ray Index no. 652314/2010 (Ray II).  In his complaint petitioner alleged that Ms. Ray owed him at least $970,000 for Ms.

[*9] Ray's damages and Ms. Ray's funds management losses and that Ms. Ray fraudulently conveyed her property to avoid paying petitioner on those debts. On July 12, 2011, the Supreme Court of New York dismissed petitioner's complaint in Ray II. On July 9, 2013, the Supreme Court of New York, Appellate Division, First Department, affirmed that decision.[3]

C.    Ray v. Ray, Et Al. Index No. 153945/2014

On April 24, 2014, petitioner filed a lawsuit against Ms. Ray and Guarnerius Management, LLC (Guarnerius), in the Supreme Court of New York, Ray v. Ray, Et Al. Index No. 153945/2014 (Ray III). In his complaint, petitioner alleged that Ms. Ray fraudulently conveyed her property because she obtained a mortgage on her property of approximately $500,000, used $80,000 of that amount to pay her former legal counsel, and transferred the remaining $420,000 to Guarnerius, her own company, all in an attempt to avoid paying the amounts she owed to petitioner. On December 22, 2014, the Supreme Court of New York dismissed petitioner's complaint in Ray III.

During the year at issue petitioner spent $151,500 on legal fees with respect to that case.

----

[3]The record before us does not establish, nor do the parties contend, that petitioner spent any legal fees with respect to Ray II during the year at issue.

**[*10]** D.    Petitioner's Suit Pursuant to Section 487 of the New York Judiciary Law

In 2012 Ms. Ray hired counsel to represent her in the continuing New York State court proceedings in Ray I.  On January 22, 2016, petitioner filed a complaint in the U.S. District Court for the Southern District of New York, alleging that Ms. Ray's counsel had violated N.Y. Jud. Law sec. 487(1) (McKinney 2016) (New York 487 complaint).  In that complaint petitioner alleged that Ms. Ray's attorneys made or consented to the making of a series of deceitful statements and representations intended to deceive the Supreme Court of New York and Supreme Court of New York, Appellate Division, in order to obtain an advantage in litigating the issue of Ms. Ray's damages.

On April 26, 2016, the U.S. District Court issued an order and decision dismissing that complaint.  Petitioner appealed that decision to the U.S. Court of Appeals for the Second Circuit.  On April 14, 2017, the Court of Appeals affirmed the order of dismissal.

Although petitioner did not file this lawsuit until 2016, the record establishes that petitioner paid $38,000 of legal fees with respect to this case during the year at issue.

**[\*11]** IV.    <u>Petitioner's 2014 Return and Notice of Deficiency</u>

Petitioner filed a Form 1040, U.S. Individual Income Tax Return for the year at issue (2014 return). On line 21 of that form petitioner reported as "Other income" "legal fees, costs" of "(238,937)". The parties have stipulated, however, that petitioner paid $267,224 in legal fees for the year at issue.

Respondent selected petitioner's 2014 return for examination. The revenue agent tasked with examining petitioner's 2014 return determined that petitioner (1) was not entitled to a deduction for legal fees and (2) was liable for an accuracy-related penalty under section 6662(a). On September 23, 2015, the immediate supervisor of that revenue agent approved the revenue agent's initial determination to impose the accuracy-related penalty in this case. Subsequently, on March 16, 2016, respondent issued a notice of deficiency to petitioner, reflecting the revenue agent's deficiency and penalty determinations with respect petitioner's tax year at issue. Petitioner timely filed a petition for redetermination with this Court.

**[\*12]**                                     OPINION

I.      <u>Deductions Generally</u>

Deductions are a matter of legislative grace, and a taxpayer must prove his

or her entitlement to a deduction.  <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79,

84 (1992); <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934).  To that

end, taxpayers are required to substantiate each claimed deduction by maintaining

records sufficient to establish the amount of the expense underlying the deduction

and to enable the Commissioner to determine the correct tax liability.  Sec. 6001;

<u>Higbee v. Commissioner</u>, 116 T.C. at 438, 440 (2001).

Generally, if a taxpayer establishes that he or she paid or incurred a

deductible expense but fails to establish the amount of the deduction, the Court

may estimate the amount allowable as a deduction.  <u>Cohan v. Commissioner</u>, 39

F.2d 540, 543-544 (2d Cir. 1930); <u>Vanicek v. Commissioner</u>, 85 T.C. 731, 742-

743 (1985).  This principle is often referred to as the <u>Cohan</u> rule.  <u>See, e.g.</u>, <u>Estate

of Reinke v. Commissioner</u>, 46 F.3d 760, 764 (8th Cir. 1995), <u>aff'g</u> T.C. Memo.

1993-197.  When the Court applies the <u>Cohan</u> rule, the taxpayer must introduce

sufficient evidence to permit us to conclude that the taxpayer paid or incurred a

deductible expense in at least the amount allowed.  <u>See Williams v. United States</u>,

245 F.2d 559, 560 (5th Cir. 1957); <u>Vanicek v. Commissioner</u>, 85 T.C. at 742-743.

**[\*13]** In estimating amounts allowable pursuant to the <u>Cohan</u> rule, we bear heavily upon the taxpayer who failed to maintain the required records and to substantiate deductions as the Code requires. <u>See</u> <u>Cohan v. Commissioner</u>, 39 F.2d at 544.

## II. Burden of Proof

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer ordinarily bears the burden of proving those determinations erroneous. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). In order for the Court to shift the burden as to any factual issues relevant to ascertaining the taxpayer's tax liability, the taxpayer must introduce credible evidence with respect to the issues and have complied with all substantiation and recordkeeping requirements imposed by the Code. Sec. 7491(a)(1) and (2). Credible evidence is that which the Court would find sufficient upon which to base its decision if no contrary evidence were submitted. <u>Higbee v. Commissioner</u>, 116 T.C. at 442. A taxpayer who provides only uncorroborated testimony and inconclusive documentation does not provide credible evidence. <u>Id.</u> at 445-446. We decide this case, however, on the preponderance of credible evidence, and not on any failure to carry the burden of proof. Therefore, we need not decide whether petitioner satisfied the requirements of section 7491(a). <u>Knudsen v. Commissioner</u>, 131 T.C. 185, 189 (2008).

**[*14]** III.     Section 162(a):  Business Expense Deduction

Section 162(a) allows a taxpayer to deduct all ordinary and necessary expenses paid or incurred during the year in carrying on a trade or business.  An ordinary expense is one that occurs commonly or frequently in the taxpayer's business, Deputy v. du Pont, 308 U.S. 488, 495 (1940), and a necessary expense is one that is appropriate in carrying on the taxpayer's business, Welch v. Helvering, 290 U.S. at 113.  The expense must directly connect with or pertain to the taxpayer's business.  Sec. 1.162-1(a), Income Tax Regs.  A taxpayer may not deduct personal, living, or family expenses unless the Code expressly provides otherwise.  Sec. 262(a).

Legal expenses are deductible under section 162(a) as ordinary and necessary business expenses, but only if the expense is directly connected with, or proximately related to, the taxpayer's business.  Bingham Tr. v. Commissioner, 325 U.S. 365, 373-374 (1945); Rafter v. Commissioner, 60 T.C. 1, 8 (1973), aff'd without published opinion, 489 F.2d 752 (2d Cir. 1974).  In this sense the deductibility of legal fees depends on the origin and character of the claim for which the expenses were incurred and whether the claim bears a sufficient nexus to the taxpayer's business or income-producing activities.  See United States v.

**[*15]** <u>Gilmore</u>, 372 U.S. 39 (1963); <u>see also</u> <u>Test v. Commissioner</u>, T.C. Memo. 2000-362, slip op. at 8-14, <u>aff'd</u>, 49 F. App'x 96 (9th Cir. 2002).

Petitioner contends that he is entitled to a deduction of $267,224 under section 162(a) with respect to legal expenses related to Ms. Ray's damages and Ms. Ray's funds management losses because petitioner was engaged in the computer programming business and those legal expenses originated from his conduct of that business in 1993.  Conversely, respondent contends that petitioner is not entitled to that deduction because:  (1) the origin of petitioner's claim with respect to Ms. Ray's damages is not related to a trade or business and (2) petitioner was not engaged in a trade or business relating to Ms. Ray's funds management losses.  Should we find that a portion of petitioner's legal expenses relates to Ms. Ray's funds management losses and hold that those expenses are deductible under section 212, respondent urges the Court to take full account of petitioner's failure to establish what portion of his legal expenses was deductible under section 212.

A. <u>Legal Expenses Related to Ms. Ray's Damages</u>

We first turn to whether petitioner is entitled to a deduction under section 162(a) with respect to the legal expenses related to Ms. Ray's damages.

**[\*16]** As we stated above, the deductibility of legal fees depends on the origin and character of the claim for which the expenses were incurred and whether the claim bears a sufficient nexus to the taxpayer's business or income-producing activities. See Gilmore, 372 U.S. 39; see also Test v. Commissioner, slip op. at 8-14. Petitioner contends that he is entitled to a deduction under section 162(a) with respect to legal expenses related to Ms. Ray's damages because he was engaged in a computer programming business with Ms. Ray (purported business) and that the legal expenses related to the claims underlying Ray I find their origin in that business. Respondent, however, contends that the origin and character of those claims lack a sufficient nexus to the purported business or any other income-producing activity.

Ms. Ray's damages (i.e., those resulting from the confession of judgment, late financials, and credit card debt) are the subject of petitioner's first cause of action against Ms. Ray, in Ray I. With respect to the portion of that first cause of action related to the confession of judgment, petitioner alleged that Ms. Ray failed to pay him for money that she owed him related to the Sagaponack property, the 87th Street residence, and outstanding credit card debt before they executed the commodities account agreement. The facts relating to the Sagaponack property and the 87th Street residence lack any nexus to petitioner's purported business.

[*17] With respect to the credit card debt, there is nothing in the record to support petitioner's contention that debt related to the purported business. Further, we find that certain material aspects of petitioner's testimony with respect to these issues went uncorroborated and lacked credibility. Accordingly, we decline to rely on petitioner's testimony to establish his position that he is entitled to a deduction under section 162(a) with respect to the legal expenses related to Ms. Ray's damages for credit card debt. See, e.g., Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

With respect to the portion of that first cause of action related to damages for late financials, the record lacks any credible evidence that those damages related to or otherwise originated from the purported business. Petitioner contends that the portion of Ms. Ray's damages for late financials related to the purported business because the agreement dated September 5, 1993, that gave rise to those damages occurred "shortly after the recent losses from testing the trading program which significantly increased the debt * * * [Ms.] Ray owed [p]etitioner." However, the fact that the parties executed the agreement shortly after "recent losses from testing the trading program" does not override the explicit text of that agreement, which stated in pertinent part: "The Statements will be of my net

**[\*18]** worth as of each September 15 and March 15 until the debt as reflected in my Confession of Judgment sworn to April 13, 1993 ('the Debt') is paid in full."

The explicit text of that agreement only contemplates the confession of judgment and, as discussed above, lacks any nexus to the purported business. Accordingly, we find petitioner's contention to be without merit.

Ms. Ray's damages also serve as the origin of the claim underlying petitioner's New York 487 complaint. The additional context, there, does not alter our assessment of the relevant facts: The record does not support a finding of any nexus between Ms. Ray's damages and the purported business.

On the record before us, we find that none of the claims giving rise to Ms. Ray's damages underlying the first cause of action in <u>Ray I</u> bear a sufficient relation to petitioner's purported business. We find similarly with respect to petitioner's New York 487 complaint. Accordingly, petitioner is not entitled to a deduction under section 162(a) with respect to the legal expenses related to Ms. Ray's damages.

[*19] B.    Legal Expenses Related to Ms. Ray's Funds Management Losses

We next turn to whether petitioner is entitled to a deduction under section 162(a) with respect to the legal expenses related to Ms. Ray's funds management losses.

As we stated above, section 162(a) allows a taxpayer to deduct all ordinary and necessary expenses paid or incurred during the year in carrying on a trade or business. To be engaged in a trade or business the taxpayer must participate in the activity with continuity and regularity, and his primary purpose for engaging in the activity must be for income or profit. Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). To prove continuity and regularity the taxpayer generally must show "extensive business activity over a substantial period as opposed to a onetime venture or investment." Jafarpour v. Commissioner, T.C. Memo. 2012-165, slip op. at 15. The management of one's investments, no matter how extensive, is not a "trade or business." Whipple v. Commissioner, 373 U.S. 193, 200 (1963); see also Beals v. Commissioner, T.C. Memo. 1987-171.

Ms. Ray's funds management losses are the subject of petitioner's second cause of action against Ms. Ray in Ray I. Petitioner contends that he is entitled to a deduction under section 162(a) with respect to legal expenses related to Ms. Ray's funds management losses because he was engaged in a computer

[*20] programming business.  In support of his position he claims that his history of creating computer programs for Wall Street shows that he was engaged in the computer programming business with respect to the purported business because: (1) he collected a multimillion dollar settlement with respect to one of his prior Wall Street computer programs, (2) he used a portion of that money to "collaborate with * * * [Ms.] Ray to develop * * * a trading program", and (3) "the fact that he immediately put a portion of his business profit at risk [from his multimillion dollar settlement] to continue developing programs for Wall Street show[ed] he was 'involved in the activity with continuity and regularity.'" Respondent, however, contends that petitioner is not entitled to that deduction because he was not engaged in a trade or business.  We agree with respondent.

The facts establish that the purported business was in actuality Ms. Ray's management of a hedge fund and that petitioner's involvement in her management of that fund extended no further than his initial investment.  See Whipple v. Commissioner, 373 U.S. at 200; Beals v. Commissioner, T.C. Memo. 1987-171. The following facts support such a conclusion.  In 1993 Ms. Ray approached petitioner with a plan to make money.  Ms. Ray's plan proposed using petitioner's capital to trade commodities futures and options to test the market theories and trading methods that she had developed.  On May 24, 1993, petitioner and Ms.

[*21] Ray executed the commodities account agreement allowing Ms. Ray the sole discretion to trade on petitioner's commodities account. At no time did petitioner ever trade on his account. After a few months, Ms. Ray stopped trading on petitioner's account because there was too little cash in the account to allow any further trades.

On the record before us, we find that the purported business did not constitute, and petitioner was not engaged in, a computer programming trade or business.[4] Accordingly, petitioner is not entitled to a deduction under section 162(a) with respect to the legal expenses related to Ms. Ray's funds management losses.

IV. Section 212: Expenses for Production of Income

Since we have found that petitioner is not entitled to a deduction under section 162(a) with respect to legal expenses for Ms. Ray's damages and Ms.

---

[4]To this extent, we also find that petitioner was not engaged in trade or business because the record does not establish that he participated in the purported business with continuity and regularity. See Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987); Jafarpour v. Commissioner, T.C. Memo. 2012-165, slip op. at 15-18. The mere fact that petitioner had earned income from working in the computing programming industry and then invested that money in another venture does not mean that the latter venture (i.e., the purported business) is automatically a computer programming business. Nor do such actions indicate that the purported business is a continuation of petitioner's former work as a computer programming professional.

[*22] Ray's funds management losses, we must determine whether petitioner is entitled to a deduction under section 212 for any portion of that amount.

Section 212 allows an individual to deduct all of the ordinary and necessary expenses paid or incurred: (1) for the production of income; (2) for management, conservation, or maintenance of property held for the production of income; or (3) in connection with the determination, collection, or refund of a tax.[5]

As we found above, petitioner was not engaged in a trade or business with respect to the purported business. We do find, however, that petitioner engaged in that purported business with the intent of generating a profit. See Johnson v. Commissioner, 72 T.C. 340, 347 (1979); see also Commissioner v. Groetzinger, 480 U.S. at 35. Accordingly, a portion of the legal expenses related to Ms. Ray's funds management losses may be deductible under section 212. Since petitioner,

---

[5]We note that in his answering brief petitioner cites portions of respondent's opening brief as well as the fact that the commodities account agreement provided to him the ability to "advertise the results of * * * [Ms. Ray's] trading in * * * [his] account", as support for the proposition that petitioner's purported business must be for income or profit. We agree, but the determination of whether a taxpayer is engaged in a trade or business is not based solely on whether that taxpayer had a profit-seeking motive. See Commissioner v. Groetzinger, 480 U.S. at 35. Petitioner's contentions are relevant, however, because under sec. 212(1), individuals may deduct all ordinary and necessary expenses paid or incurred during the tax year for the production or collection of income. Our analysis is similar to that used for sec. 162(a), the difference being that the profit-seeking or income-producing activity need not amount to a trade or business. Johnson v. Commissioner, 72 T.C. 340, 347 (1979).

**[\*23]** however, did not establish the amount of those losses with respect to section 212, we will apply the Cohan rule. In Ray I petitioner had two causes of action and sought damages as follows: approximately $590,223 with respect to the first cause of action stemming from Ms. Ray's damages and approximately $384,388 with respect to the second cause of action stemming from Ms. Ray's funds management losses. Because we find that only the second cause of action related to the production of income under section 212(1), our application of the Cohan rule allows petitioner to deduct the corresponding percentage of legal expenses (i.e., $384,388/974,611 or approximately 39.5%) with respect to those incurred in Ray I. We apply the same rationale and ratio with respect to the legal expenses incurred in Ray III. Accordingly, petitioner is entitled to deduct 39.5% of the legal expenses paid with respect to Ray I and Ray III for the year at issue.

V.     Section 6662(a): Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) imposes an accuracy-related penalty on any portion of an underpayment of tax that is attributable to the taxpayer's "negligence or disregard of rules or regulations" or "substantial understatement of income tax". Negligence occurs when the taxpayer fails to make a reasonable attempt to comply with the provisions of the Code, while disregard of the rules or regulations means any careless, reckless, or intentional disregard thereof. Sec.

**[\*24]** 6662(c); sec. 1.6662-3(b), Income Tax Regs.  An understatement of income tax is substantial if the amount of the understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1)(A).

The Commissioner bears the burden of production with respect to the accuracy-related penalty under section 6662 and must produce sufficient evidence to establish that it is appropriate to impose such a penalty.  Sec. 7491(c); Higbee v. Commissioner, 116 T.C. at 446.  In order to do so the Commissioner must offer into the record evidence of his compliance with the written supervisory approval requirement of section 6751(b)(1).  Graev v. Commissioner, 149 T.C. 485, 493 (2017), supplementing and overruling in part 147 T.C. 460 (2016).  On the record before us we find that the Commissioner has met this aspect of his burden of production.[6]  Accordingly, if the Rule 155 computations confirm a

_____

[6]On November 30, 2016, the Court issued its Opinion in Graev v. Commissioner (Graev II), 147 T.C. 460 (2016), holding that the Commissioner was required to comply with the written supervisory approval requirement of sec. 6751(b)(1) before the actual assessment of applicable penalties.  The record in this case was initially closed on June 28, 2017, and briefing was completed on October 26, 2017.  At the close of the record and through the completion of briefing, Graev II was controlling in this case.  See Golsen v. Commissioner, 54 T.C. 742, 757 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971).  Accordingly, the parties did not attempt to introduce evidence with respect to, or brief the Court on the applicability of, sec. 6751(b)(1).

(continued...)

**[\*25]** substantial understatement for the taxable year at issue, then respondent has

---

⁶(...continued)

On December 20, 2017, this Court released Graev v. Commissioner (Graev III), 149 T.C. 485 (2017), supplementing and overruling in part 147 T.C. 460 (2016). In Graev III, 149 T.C. at 493, as pertinent here, this Court reconsidered its position in Graev II and held that establishing compliance with the written supervisory approval requirement of sec. 6751(b)(1) was part of the Commissioner's burden of production with respect to penalties in a deficiency case.

On February 13, 2018, respondent filed a motion to reopen the record (respondent's motion) that offered an additional exhibit for the purpose of establishing the Commissioner's compliance with the requirements of sec. 6751(b)(1) (respondent's exhibit). That motion's exhibit comprised a case history report related to the examination that gave rise to this case and a foundational declaration prepared by the immediate supervisor of the revenue agent who administered that examination (revenue agent's supervisor). Subsequently, we afforded petitioner the opportunity to object to respondent's motion and to engage in additional discovery. Petitioner objected to respondent's motion and advanced an argument that questioned the credibility of respondent's exhibit (petitioner's credibility argument) but declined to engage in further discovery.

On October 16, 2018, this Court issued an order that granted respondent's motion and reopened the record for the purpose of admitting respondent's exhibit into evidence. In that same order we also afforded the parties the opportunity to file a supplemental brief with the Court for the limited purpose of advancing any factual or legal argument with respect to the requirements of sec. 6751(b)(1). Petitioner supplemented his brief and there argued that respondent's exhibit failed to establish that the revenue agent's supervisor adequately considered the merits of the accuracy-related penalty, as applied to this case, before deciding to approve that penalty's imposition (petitioner's merit argument).

We are unpersuaded by petitioner's credibility argument, especially in the light of petitioner's decision not to engage in additional discovery with respect to that issue. Further, we are unmoved by petitioner's merit argument as it invites the Court to contravene the rule stated by this Court in Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324 (1974), and we decline to do so. See Raifman v. Commissioner, T.C. Memo. 2018-101, at \*61 n.46 (citing Lorillard v. Pons, 434 U.S. 575, 580 (1978)).

**[\*26]** met his burden of producing evidence that the penalty is justified. See sec. 7491(c). Further, we observe that petitioner claimed a deduction under section 162(a) with respect to legal expenses related to Ms. Ray's damages despite being aware of the fact that those were not related to the purported business. For that reason, respondent has also met his burden of production with respect to, and we find that petitioner's underpayment of tax was also attributable to, negligence.

The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if it is shown that there was reasonable cause for, and that the taxpayer acted in good faith with respect to, such portion. Sec. 6664(c)(1). The determination of whether the taxpayer acted with reasonable cause and in good faith depends on all the pertinent facts and circumstances, including the taxpayer's efforts to assess the taxpayer's proper tax liability, the knowledge and experience of the taxpayer, and the reliance on the advice of a professional, such as an accountant. See sec. 1.6664-4(b)(1), Income Tax Regs.

It is petitioner's position is that he is not liable for the accuracy-related penalty for the year at issue because he had reasonable cause and acted in good faith with respect to his return position. In support petitioner claims that he relied on a stipulated decision for a different tax year when he evaluated the facts underlying his return position for the year at issue. Petitioner claims that this

**[\*27]** reliance is reasonable.  Alternatively, petitioner contends that his return position was reasonable because he made a mistake as to applicable law.  Petitioner's contention in this respect draws on respondent's position with respect to his eligibility for a section 212 deduction, arguing that respondent's position illustrates that he could have "easily been confused about which Code section was more appropriate * * * [concluding] the reasonable cause here is [p]etitioner's mistake as to the law."  We will address each of petitioner's arguments in turn.

We turn to petitioner's argument with respect to a stipulated decision for a different tax year.  That document does not state or give rise to an inference that petitioner was involved in a computer programming business as he claims here.  At best the stipulation might support the drawing of an inference, albeit an incorrect one, that petitioner engaged in a commodities futures trading business during that year and was therefore entitled to a section 162(a) deduction for associated expenses in that year.  But petitioner did not argue that he engaged in such a line of business during the year at issue.  Instead, he repeatedly argued that the purported business was a computer programming business.  Accordingly, we do not understand how, especially when factoring in his high level of education, petitioner believes that a stipulated decision supports the position he took on his return and subsequently before this Court.  On the record before us, we find that

**[\*28]** petitioner's reliance on a stipulated decision for a different tax year as support for the position he took on his return does not constitute reasonable cause.

We next to turn to petitioner's mistake-of-law theory of reasonable cause. Since filing his petition, petitioner has argued that he is entitled to a deduction under section 162(a), which, as we noted above, hinges upon whether a taxpayer was engaged in a trade or business. At no time, including in his posttrial briefs, did petitioner concede that he was not engaged in a trade or business or even argue in the alternative that he may only be entitled to a section 212 deduction. Instead, petitioner's mistake-of-law theory relies solely on the reality that this Court's analysis under section 212, to an extent, bears a similarity to our analysis under section 162(a), the difference being that the profit-seeking or income-producing activity need not amount to a trade or business. See Johnson v. Commissioner, 72 T.C. at 347. This, however, does not support the proposition that petitioner's return position for the year at issue was based on an honest mistake as to the law. Accordingly, we find that petitioner has failed to demonstrate such a mistake.

On the record before us, we find that petitioner has failed to carry his burden of establishing that there was reasonable cause for, and that he acted in good faith with respect to, the underpayment for the year at issue. On that record we find that if Rule 155 computations confirm a substantial understatement of

**[*29]** income tax, petitioner has failed to carry his burden of establishing that he is not liable for the accuracy-related penalty, because his underpayment is attributable to both negligence and a substantial understatement of income tax under section 6662(a) and (b)(1) and (2).

We have considered all the other arguments of the parties, and to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.